593 So.2d 634 (1992)
Michael J. GREEN, United States Fidelity & Guaranty Co.
v.
INDUSTRIAL HELICOPTERS, INC.
Nos. 91-C-0859, 91-C-0860.
Supreme Court of Louisiana.
January 17, 1992.
Rehearing Denied February 20, 1992.
*636 Nicholas Gachassin, Jr., Gachassin, Hunter & Sigur and Mary Ann Olson, Lafayette, for applicant.
Karl W. Bengtson, Shelton and Legendre, Lafayette, and Charles Sonnier, and Fred W. Davis, Sonnier, Hebert, Cabes & Hebert, Abbeville, for respondent.
CALOGERO, Chief Justice.
The narrow question presented in this case is whether Louisiana Civil Code article 2317[1], which imposes strict liability for injury causing things in one's custody, is applicable in a case cognizable in admiralty but brought in a Louisiana state court pursuant to the "savings to suitors" clause of the Judiciary Act of 1789 as amended.
Originally, the court of appeal held that plaintiff could recover under La.C.C. art. 2317 for an injury in a helicopter crash at sea. Green v. Industrial Helicopters, Inc., 560 So.2d 684 (La.App. 3d Cir.1990). We granted writs and remanded to the third circuit court of appeal to determine whether the decision was in conflict with another out of the same circuit, Duhon v. Petroleum Helicopters, Inc., 554 So.2d 1270 (La.App. 3 Cir.1989), writ denied, 559 So.2d 1360 (La.1990), and if so, to determine which decision is correct. Upon remand, the court of appeal found its original decision,[2] that recovery was available under Article 2317, inconsistent with Duhon, supra, and that Duhon was correct. Green v. Industrial Helicopters, Inc., 576 So.2d 1183 (La.App. 3d Cir.1991). We granted writs once more to examine that determination.
For the reasons which follow we reverse the court of appeal and hold that Article 2317 applies as a supplement to the remedies available under the general maritime law in this maritime personal injury case, since Article 2317 does not impermissibly conflict with the substantive general maritime law.
Plaintiff, Michael J. Green was employed as an offshore oil meter technician for Southern Petroleum Labs ("Southern"). Southern contracted with Industrial Helicopters, Inc. ("Industrial") to carry workers from Louisiana shore sites to offshore platforms. Doug Wright was employed by Industrial as a helicopter pilot. There occurred an emergency helicopter landing on the high seas approximately 150 miles off the Louisiana coast. Plaintiff's lawsuit, filed in the Fifteenth Judicial District Court, State of Louisiana, named as defendants the pilot of the aircraft, Wright, and the pilot's employer, Industrial.
Wright picked up the plaintiff in Milton, Louisiana. From there plaintiff was to be taken to his worksite in the Gulf of Mexico from which he was later to be returned to Milton. En route to the worksite, the pilot refueled at an Exxon platform located 140 miles off the coast of the State of Louisiana. After refueling and soon after taking off from the Exxon platform, mechanical failure caused the pilot to make an emergency landing in the Gulf. The helicopter's governor had malfunctioned. Workers on the nearby Exxon platform assisted in the rescue of plaintiff and the pilot. Plaintiff suffered injuries in the emergency landing and in the rescue.
Generally, federal maritime jurisdiction is invoked whenever an accident occurs on the high seas and in furtherance of an activity bearing a significant relationship to a traditional maritime activity. Offshore Logistics v. Tallentire, 477 U.S. 207, 106 *637 S.Ct. 2485, 91 L.Ed.2d 174 (1986); Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). The United States Supreme Court has stated that although a helicopter is not a "traditional maritime conveyance", when it is used to ferry passengers from an island to the shore or vice versa it is engaged in a function traditionally performed by waterborne vessels. Tallentire, 477 U.S. at 217, 106 S.Ct. at 2492.
The United States Constitution grants to federal district courts jurisdiction in all "cases of admiralty and maritime jurisdiction." U.S. Const. art. III, section 2, Rodrigue v. Legros, 563 So.2d 248, 251 (La.1990). State courts, however, have concurrent jurisdiction by virtue of the "savings to suitors" clause of the Judiciary Act of 1789.[3] This case, although within the federal admiralty jurisdiction, is brought in state court pursuant to the savings clause.
It is well settled that by virtue of the savings clause "a state, `having concurrent jurisdiction, is free to adopt such remedies, and to attach to them such incidents as it sees fit' so long as it does not attempt to make changes in the substantive maritime law." (citations omitted) Tallentire, 477 U.S. at 221, 106 S.Ct. at 2494. As a general proposition, "[a] maritime claim brought in the common law state courts... is governed by the same principles as govern actions brought in admiralty, i.e., by federal maritime law." Powell v. Offshore Navigation, Inc., 644 F.2d 1063, 1065 n. 5 (5th Cir.1981), See also T. Schoenbaum, Admiralty and Maritime Law § 4-1 at 123 (1987) [hereinafter, Schoenbaum]. Since the general maritime law is not a "complete or all inclusive system," a federal court may adopt state statutory law and common law principles as the federal admiralty rule. Schoenbaum, supra, § 4-1 at 123. State law and regulations may also supplement federal maritime law when "there is no conflict between the two systems of law, and the need for uniformity of decision does not bar state action". Id. at 123.
The U.S. Supreme Court has explicitly recognized the difficulty in defining the interplay of state law and federal maritime law, and has stated: "if one thing is clear it is that the source of law in saving-clause actions cannot be described in absolute terms." Romero v. International Terminal Operating Co., 358 U.S. 354 at 373, 79 S.Ct. 468 at 480, 3 L.Ed.2d 368 (1959). Indeed, as Justice Dennis of this court has commented, "[d]espite [a] multitude of cases involving maritime situations, the Court has developed no clear test for determining when such application is appropriate and when it violates the Constitution." Rodrigue v. Legros, 563 So.2d at 253. The question whether La.C.C. art. 2317 applies under these circumstances is a res nova issue in this court. Nor has the U.S. Supreme Court directly addressed whether strict custodial liability may be part of the general maritime law, nor expressly authorized Louisiana's supplementation in that fashion for cases properly within Louisiana courts' jurisdiction and tried in those courts.[4]
The process of determining the applicability of state law in cases within the *638 admiralty jurisdiction has been described as:
one of accommodation, entirely familiar in many areas of overlapping state and federal concern, or a process somewhat analogous to the normal conflict of laws situation where two sovereignties assert divergent interests in a transaction as to which both have some concern. Kossick [v. United Fruit Co.], supra [365 U.S. 731] at 738 [81 S.Ct. 886 at 892, 6 L.Ed.2d 56 (1961)].
Thus, state law may be applied where the state's interest in a matter is greater than the federal interest. This principle, applying the state rule in a matter within the admiralty jurisdiction when the state interest outweighs the federal interest, has been recognized by the U.S. Supreme Court. See Huron Portland Cement Co. v. City of Detroit, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960) (allowed City of Detroit to impose the requirements of its smoke control regulations on vessels coming to the city, even though vessel owners met federal standards); Just v. Chambers, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1941) (allowed state survival action to supplement maritime law); Red Cross Line v. Atlantic Fruit, 264 U.S. 109, 44 S.Ct. 274, 68 L.Ed. 582 (1924) (allowed state court to compel arbitration under arbitration provision of maritime contract reasoning that since it was a valid clause under admiralty law, it was proper to substitute a different and more effective remedy); Cf. Kossick v. United Fruit Co., 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961) (the U.S. Supreme Court utilized an interest balancing approach but concluded that the need for a uniform rule regarding contracts required allowing the federal rule to prevail).
Louisiana has a strong interest in applying its own law in this case: Plaintiff is a Louisiana resident, Industrial a Louisiana corporation, the pilot a Louisiana resident, and the helicopter was stored in a Louisiana hangar. The contract of carriage between plaintiff's employer and defendants was confected in Louisiana. The mission started in Louisiana and was to end in Louisiana. Plaintiff and defendants, more likely than not, expected to be governed by Louisiana law.
Moreover, La.C.C. art. 2317 embodies a strong social policy to place liability with the owner or custodian of an injury causing thing. This type of liability is not imposed exclusively on helicopter or aircraft owners. Article 2317 liability is imposed on owners and custodians of any thing which, because of an unreasonably dangerous condition, causes injury to another. Also, in the personal injury area states have much freedom to provide redress for their citizens.
In Daigle v. Coastal Marine, Inc., 488 So.2d 679, 681 (La.1986) we stated:
When congress is silent on a particular question, there is no bar to application of a state statute to its own citizens on the high seas. Skiriotes v. Florida, 313 U.S. 69, 61 S.Ct. 924 [85 L.Ed. 1193 (1941) ], reh. den. 313 U.S. 599, 61 S.Ct. 1093 [85 L.Ed. 1552] (1941). Louisiana can extend the protection of LSAC.C. art. 2315 to its constitutional limits in personal injury actions involving Louisiana residents where Louisiana has a strong interest in the transaction and there is no conflict with federal law. (citation omitted).
Accordingly, a Louisiana state court should respect Louisiana law unless there is some federal impediment to application of that law contained in federal legislation or a clearly applicable rule in the general maritime law. We have found no such impediment or contrary general maritime rule. Rather, the general maritime law authorizes application of state law as a supplement to the general maritime law.
The court of appeal in this case, on the other hand, found that La.C.C. art. 2317 "alters or conflicts with the maritime or admiralty law which establishes the substantive rights of the parties." Green v. Industrial Helicopters, Inc., 576 So.2d at 1184, citing Hebert v. Diamond M. Co., 367 So.2d 1210 (La.App. 1st Cir.1978). This finding was premised upon the assumptions 1) that application of La.C.C. art. 2317 is precluded because the general maritime law does not contain an exact counterpart *639 to Article 2317, and 2) that there is an applicable maritime rule which requires proof of negligence by a passenger injured in a helicopter crash on the high seas. Although the court of appeal correctly found that the case is governed by the admiralty law, the two underlying assumptions recited above are not well founded. As a matter of logic and legally permissible principle, Louisiana may afford a remedy not traditionally found in the maritime law, provided that the remedy neither conflicts with substantive maritime law nor impermissibly interferes with the requirement of uniformity.
Contrary to the implication of the court of appeal decision, finding an exact counterpart to strict custodial liability in the general maritime law is not a prerequisite for application of La.C.C. art. 2317. The proper inquiry is whether in this setting strict liability under Louisiana law thwarts the purpose of any specific Congressional pronouncement, or "work[s] material prejudice to the characteristic features of maritime law or interfere[s] with the proper harmony or uniformity of that law in its international and interstate relations". Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921); Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917). Thus, the balance of this analysis will entail determining whether there is applicable federal legislation, identifying the "characteristic features of maritime law", and examining the scope of the uniformity requirement.
The first step in our examination involves determining whether there is an applicable Congressional pronouncement governing the liability of a helicopter owner to an offshore worker passenger for injuries sustained by the passenger from a crash landing on the high seas caused by the defective condition of the helicopter. Where Congress has spoken in a particular area, courts engage in the familiar preemption analysis. Offshore Logistics, supra, 106 S.Ct. at 2494-2500; Askew v. American Waterways Operators, Inc., 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973); Poche v. Avondale Shipyards, Inc., 339 So.2d 1212, 1218 (La.1976). Although Congress may have "acted in the admiralty area, state regulation is permissible, absent a clear conflict with the federal law". Askew, 411 U.S. at 342, 93 S.Ct. at 1600. Thus, in Askew the U.S. Supreme Court refused to enjoin application of the Florida Oil Spill Prevention and Pollution Control Act which imposed strict liability for damage as a result of an oil spill in the state's territorial waters despite the existence of "a pervasive system of federal control over discharges of oil `into or upon the navigable waters of the United States ...'". Id. 411 U.S. at 329, 93 S.Ct. at 1594.
The only federal legislation possibly applicable to this incident is Section 1333(a) of OCSLA, and that statute adopts state law as surrogate federal law. The relevant portions of that section state:
To the extent that they are applicable and not inconsistent with ... Federal laws and regulations ... the civil and criminal laws of each adjacent State are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon. (emphasis added) 43 U.S.C.A. § 1333(a)(2)(A).
It appears that OCSLA is not applicable to accidents occurring near a structure located on the outer Continental Shelf. The U.S. Supreme Court has said as much in Offshore Logistics v. Tallentire, 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986), where the wives of two offshore drilling platform workers, who were killed when the helicopter carrying them from a platform to shore crashed on the high seas, contended that the more generous state law should apply rather than the Death on the High Seas Act (DOHSA). Specifically, the wives argued that state law applied via the state law extension clause of OCSLA because "OCSLA applies to traditionally maritime locales on the high seas, beyond the confines of the platform, when the decedent is a platform worker". Id. at 477 U.S. 218, 106 S.Ct. at 2492. The U.S. Supreme Court dismissed this argument by stating:

*640 The extension of OCSLA far beyond its intended locale to the accident in this case simply cannot be reconciled with either the narrowly circumscribed area defined by the statute or the statutory prescription that the Act not be construed to affect the high seas which cover the Continental Shelf. Nor can the extension of OCSLA to this case be reconciled with the operative assumption underlying the statute: that admiralty jurisdiction generally should not be extended to accidents in areas covered by OCSLA.
* * * * * *
We do not interpret ... 43 U.S.C. § 1333, to require or permit us to extend the coverage of the statute to the platform workers in this case who were killed miles away from the platform and on the high seas simply because they were platform workers. Id. 477 U.S. at 218, 106 S.Ct. at 2492.
Tallentire was admittedly a wrongful death case under DOHSA. The U.S. Supreme Court nonetheless found reason to determine that section 1333(a) of OCSLA does not apply to accidents occurring on the high seas near an OCSLA covered area. This conclusion should apply equally to the personal injury case under consideration here. Since this accident occurred near but not on a platform located on the outer Continental Shelf, OCSLA's state law extension clause is therefore not triggered.
Absent a clearly applicable act of Congressand there is none herewe next look to the general maritime law to determine if application of La.C.C. art. 2317 would materially prejudice the "characteristic features of maritime law".
The traditional remedies available for employee injuries occurring within admiralty depend upon a person's classification as a seaman, a non-seaman maritime worker, or a nonmaritime worker. Remedies available to "seamen" include wages, maintenance and cure for injury or illness. Recovery includes payment of actual wages, payment for food and lodging, and the providing of necessary medical services. Seamen have claims, too, for personal injury damages caused by the unseaworthy condition of the vessel. The Jones Act also allows a seaman to recover damages for personal injury occurring because of the negligence of the seaman's co-workers or employer. 46 U.S.C. § 688. Shore-based maritime workers may recover workers' compensation from their employers under the Longshore and Harbor Workers Compensation Act (LHWCA). 33 U.S.C.A. §§ 901 et seq. Offshore workers may recover compensation from their employers under the LHWCA by virtue of Section 1333(b) of the outer Continental Shelf Lands Act (OCSLA).[5]
The shipowner's exposure for unseaworthiness is a form of liability without fault in that liability is imposed upon the vessel owner, whether the owner is the injured seaman's employer or a third party, and without regard to his due care or negligence. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903). It applies if the seaman's injury was caused by a defective condition of the ship, its equipment or appurtenances." Schoenbaum, supra, § 5-3. The warranty of seaworthiness was extended to persons other than "seamen" in Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), although amendments to the LHWCA later eliminated this action.[6]
*641 The U.S. Supreme Court has not addressed whether non-seamen passengers aboard a vessel have an action for unseaworthiness[7]. Lower federal courts, however, have held that the basis of recovery of damages from a carrier for personal injury to a passenger is predicated on the theory of negligence. M. Norris, The Law of Maritime Personal Injuries 4th Ed. § 3:4 at 63 (1990) [hereinafter, Norris].[8]
The latter are among the cases upon which the court of appeal in this case bases its conclusion, and Industrial relies, for its position that Article 2317 conflicts with the general maritime law. The argument is not without some appeal. However, it does not take into account that general maritime law distinctly authorizes application of supplementary state law in some situations. In our considered judgment, the general maritime law authorizes application of state law under the circumstances of this case.
Although the passenger-carrier cases referred to above are somewhat analogous there is this important difference. Those cases involved passengers aboard vessels. And the need for uniformity under the general maritime law is prompted primarily by concern regarding maritime shipping and commerce involving vessels. The U.S. Supreme Court has declared that helicopters and other aircraft are not vessels, and commentators have urged that aircraft should not be treated like vessels. Offshore Logistics v. Tallentire, supra, Smith v. Pan Air Corp., 684 F.2d 1102 (5th Cir. 1982); See also Schoenbaum, supra, § 3-6 at 80; R. Greco, Aircraft As Vessels Under the Jones Act and General Maritime Law, 22 S.Tex.LJ 595 (1982); Comment, Admiralty Jurisdiction: Airplanes and Wrongful Death in Territorial Waters, 64 Columbia Law Review 1084, 1089 n. 51-56 (1964). Aircraft are designed to cope with the perils of the air rather than the hazards of the sea. Barger v. Petroleum Helicopters, Inc., 692 F.2d 337 (5th Cir.1982), rehearing denied 698 F.2d 1216 (5th Cir.1983). The U.S. Supreme Court in Executive Jet Aviation, Inc. v. City of Cleveland, Ohio, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972) "noted that substantive maritime law ha[s] developed to serve a specialized industry, the transportation of goods and persons by water. Although aviation ha[s], to some extent, supplanted this traditional maritime activity, the ancient body of substantive law tailored to fit the needs of vessels and mariners was not suited to the problems of aircraft and aviation". J. Forney and M. Sydow, Admiralty Jurisdiction Over Injuries to Offshore Workers: A Call for Reconsideration of Robison, 22 S.Tex.LJ 461, 463 (1982).[9] Had the helicopter *642 crashed on land soon after taking off from Milton, Louisiana, without question a Louisiana court hearing the case could and should apply La.C.C. art. 2317.
Moreover, there is in the general maritime law no prohibition against strict liability. On the contrary, the general maritime law embraces strict liability in various forms. Most recently the U.S. Supreme Court has recognized "products liability, including strict liability, as part of the general maritime law." East River S.S. Corp. v. Transamerica Delaval, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). The rationale that "[s]trict liability should be imposed on the party best able to protect persons from hazardous equipment" applies equally to strict products liability claims. Id. 476 U.S. at 866, 106 S.Ct. at 2299. Another form of strict liability recognized in the general maritime law is the above discussed seaman's action for unseaworthiness. Given the lack of maritime rule clearly applicable to a helicopter crash on the high seas and the recognition of liability in the absence of fault in the general maritime law, strict custodial liability embodied in Louisiana Civil Code article 2317 cannot be said to "materially prejudice" characteristic features of the general maritime law.
The last step in our inquiry requires analyzing the scope of the uniformity requirement. The requirement of national uniformity in the area of the maritime law has dictated that state law not apply in certain situations. D. Robertson at 146; See cases cited in Rodrigue v. Legros, 563 So.2d at 252: Kossick v. United Fruit Co., supra, Southwestern Sugar & Molasses Co. v. River Terminals Corp., 358 U.S. 811, 79 S.Ct. 38, 3 L.Ed.2d 55 (1959); Bisso v. Inland Waterways Corp., 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955); Pope and Talbot, Inc. v. Hawn; Robins Dry Dock & Repair Co. v. Dahl, 266 U.S. 449, 45 S.Ct. 157, 69 L.Ed. 372 (1925).
On the other hand, courts have from time to time supplemented general maritime law with state law, such as in cases affecting "the exercise of ... [the state's] police powers or in the provision of an additional maritime tort remedy". Powell, supra, at 1065, n. 5 referring to Askew v. American Waterways Operators, Inc., 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973), rehearing den. 412 U.S. 933, 93 S.Ct. 2746, 37 L.Ed.2d 162 (1973); Romero v. International Terminal Operating Co., supra, 358 U.S. at 373-74, 79 S.Ct. at 480-81; Just v. Chambers, 312 U.S. 383, 387-92, 61 S.Ct. 687, 690-93, 85 L.Ed. 903 (1941). As Justice Black acknowledged in Pope & Talbot v. Hawn, 346 U.S. 406, 410, 74 S.Ct. 202, 205, 98 L.Ed. 143 (1953), "states may sometimes supplement federal maritime policies [although] a state may not deprive a person of any substantial maritime rights." The U.S. Supreme Court later stated that:
[i]t is true that state law must yield to the needs of a uniform federal maritime law when this Court finds inroads on a harmonious system. But this limitation still leaves the States a wide scope. State-created liens are enforced in admiralty. State remedies for wrongful death and state statutes providing for the survival of actions, both historically absent from the relief offered by the admiralty, have been upheld when applied to maritime causes of action. Federal courts have enforced these statutes. *643 State rules for the partition and sale of ships, state laws governing the specific performance of arbitration agreements, state laws regulating the effect of a breach of warranty under contracts of maritime insuranceall these laws and others have been accepted as rules of decision in admiralty cases, even, at times, when they conflicted with a rule of maritime law which did not require uniformity. Romero v. International Term. Operat. Co., 358 U.S. 354, 373, 79 S.Ct. 468, 480-481 [3 L.Ed.2d 368] (1959).
Generally where maritime contracts are involved, the federal interest is at its "zenith", Rodrigue v. Legros, supra, while in maritime tort cases the interest in uniformity is minimal because of the "fortuitous nature of accidental injuries and the strong state interest in providing redress for injuries." Id. at 254. The uniformity requirement is also tempered with a recognition that in some matters local concerns outweigh the federal need for a uniform admiralty rule. To this end the "maritime but local" doctrine emerged from U.S. Supreme Court decisions. See Western Fuel Co. v. Garcia, supra; Norris, supra, §§ 4:5, 4:6 at 115-122.
Underlying the "maritime but local" doctrine is the rationale that "[i]f it [can] be said that the work activities of the injured employee [have] no direct concern with navigation or commerce, it [is] `local' and therefore the State laws [are] applicable." Norris, supra, § 4:6 at 117. The Court has extended this reasoning to recognize a "twilight zone" or "area of doubt" within which the Longshore and Harbor Worker's Compensation Act and state compensation acts may overlap, allowing the injured worker to recover under either of them. Norris, supra, § 4:6 at 121; See Hahn v. Ross Island Sand & Gravel Co., 358 U.S. 272, 79 S.Ct. 266, 3 L.Ed.2d 292 (1959); Davis v. Department of Labor & Industries, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942).
The respect for comity underlying the "maritime but local" doctrine remains a viable rationale for allowing state law to supplement the general maritime law. See Askew v. American Waterways Operators, Inc., supra, (states may constitutionally exercise their police power regarding maritime activities concurrently with Federal Government); Palestina v. Fernandez, 701 F.2d 438 (5th Cir.1983) (boating accident which occurred on navigable Louisiana waterway described as a "garden variety state tort claim" and the state law applied); Baggett v. Richardson, 473 F.2d 863 (5th Cir.1973) (fight aboard a vessel considered a Louisiana tort claim in all other respects). This court applied the "maritime but local" and "twilight zone" doctrines in Beverly v. Action Marine Services, Inc., 433 So.2d 139 (La.1983) to allow the nondependent parents of a deceased employee of a company engaged in cleaning and repairing ocean-going vessels, recovery under the Louisiana Workers' Compensation Act despite lack of a remedy in favor of nondependent parents under the LHWCA.
An offshore worker's employment activities have no "direct concern" with maritime shipping or commerce. Norris, supra, § 4:6 at 117. The U.S. Supreme Court has stated that work related to offshore oil and gas exploration is not "maritime employment". Herb's Welding Inc. v. Gray, 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985). Therefore, the tangential relationship of offshore drilling to traditional maritime activities along with the strong Louisiana interest in a case of this nature bring this case within the "maritime but local" doctrine.
That offshore employment is of particularly local concern and not a maritime vocation is evidenced by the policies underlying Section 1333(a) of OCSLA. In that "state law extension clause", Congress "deliberately eschewed the application of admiralty principles" to incidents occurring on a platform or island on the outer Continental Shelf since "accidents on the artificial islands covered by OCSLA `[have] no more connection with the ordinary stuff of admiralty than do accidents on piers'". Tallentire, 477 U.S. at 217, 106 S.Ct. at 2491, citing Rodrigue v. Aetna Casualty & Surety Co., 395 U.S. 352, 361-366, 89 S.Ct. 1835, 1840-1842, 23 L.Ed.2d 360 (1969). Instead, Congress adopted the law of the adjacent state as "surrogate" federal law governing accidents occurring on "the subsoil *644 and seabed of the OCS and artificial islands and fixed structures erected thereon." Implicitly, this provision recognizes the offshore worker's significant tie with the adjacent state. Had Green been injured on the Exxon platform, Louisiana law could have been applied via the state law extension provision of OCSLA (provided of course that it is not "inconsistent ... with Federal laws and regulations"). 43 U.S.C.A. § 1333(a)(2)(A); Olsen v. Shell Oil Company, 365 So.2d 1285 (La.1978).
Further evidence that Congress is not insistent on uniformity in the maritime law regarding offshore exploration and drilling is found in the 1982 amendment to the Jones Act, now found in section 688(b). That statute precludes maintenance and cure and Jones Act claims for damages, regarding incidents occurring in territorial waters overlaying the Continental Shelf of a nation other than the United States, its territories and possessions if there is a remedy available under the laws of the nation asserting jurisdiction over the area or under the laws of the nation where at the time of the incident the injured person maintains citizenship or residency. 46 U.S.C.A. § 688(b).[10]
It is evident from the cases just discussed and the federal statutes to which we have alluded that there is a lessened need for uniformity in a case like the one before us.
In summary we conclude that there is no applicable contrary federal legislation and that La.C.C. art. 2317 neither prejudices the characteristic features of the general maritime law nor interferes impermissibly with any required uniformity in such law.
Article 2317 applies in this case. The court of appeal panel, in its opinion of April 18, 1990, is correct. The more recent opinion of the court of appeal sitting en banc is incorrect. Duhon v. Petroleum Helicopters, Inc., 554 So.2d 1270 (La.App. 3 Cir. 1989), writ denied, 559 So.2d 1360 (La. 1990), is overruled.

DECREE
For the foregoing reasons the March 13, 1991, judgment of the court of appeal on remand, 576 So.2d 1183 (La.App. 3 Cir. 1991), is reversed and set aside. Judgment of the court of appeal, dated April 18, 1990, 560 So.2d 684 (La.App. 3d Cir.1990), which amended and affirmed the district court, and remanded to the district court on an incidental issue[11], is reinstated and affirmed.
DENNIS, J., concurs.
WATSON, J., concurs and assigns reasons.
WATSON, Justice, concurring.
In the field of personal injury, state law may supplement general maritime law. *645 Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981). Louisiana's law of strict liability applies to injuries on the outer continental shelf off the shores of Louisiana. Olsen v. Shell Oil Company, 365 So.2d 1285 (La. 1978). Only when there are deaths on the high seas does DOHSA pre-empt state law. Tallentire; Smith v. Pan Air Corp., 684 F.2d 1102 (5th Cir.1982).
I concur to note that the majority's analysis of OCSLA may err in drawing a bright line of demarcation between platform injuries and high sea injuries. In Tallentire, the platform workers were killed miles away from the platform. By its terms, OCSLA's scope is not limited to platforms. A platform worker who is injured in the water near a rig has maritime situs. Executive Jet Aviation v. Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). However, the worker may lack maritime status. Rodrigue v. Aetna Casualty & Surety Co., 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969); Herb's Welding, Inc. v. Gray, 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985). Therefore, a platform worker's injuries in the water are not necessarily maritime and may be covered by OCSLA.
I respectfully concur in the majority opinion.
NOTES
[1] La.C.C. art. 2317 states:

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.
* * * * * *
[2] 560 So.2d 684 (La.App. 3 Cir.1990).
[3] That provision originally stated:

The district courts shall have exclusive original cognizance of all civil cases of admiralty and maritime jurisdiction ... saving to suitor, in all cases, the right of a common law remedy, where the common law is competent to give it.
In 1948 this provision was amended to read:
The district courts shall have original jurisdiction, exclusive of the courts of the states, of any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled. 28 U.S.C.A. § 1333.
This amendment has not, however, changed the scope of the savings clause. D. Robertson, Admiralty and Federalism, p. 134 (1970).
[4] "[T]he precise extent to which local rules of law will operate to modify the general maritime law applied in the federal admiralty court is by no means clear. Indeed, it would have to be said that there are not even any clearly visible principles governing the nature and degree of permissible modifications of this sort.... [I]t is not clear that state courts are limited with respect to the application of local law to the same degreewhatever it may beas are the federal admiralty courts." D. Robertson at 146
[5] 43 U.S.C.A. 1333(b). Section 1333(a) calls for the application of state law as "surrogate" federal law. Section 1333(b), which allows offshore workers to recover under the LHWCA:

is expansive ... [and] extends to every injury or death "occurring as a result of operations... for the purpose of exploring for, developing, removing, or transporting ... natural resources. 43 U.S.C.A. § 1333(b). The state law extension clause [§ 1333(a) ], however, is considerably narrower, providing only for the application of state law to "the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon." Barger v. Petroleum Helicopters, Inc., 692 F.2d 337, 340 (5th Cir.1982).
[6] The Longshore and Harbor Workers Compensation Act was amended in 1972 and those amendments expanded the categories of workers covered by the Act. The amendments also provide that employees covered by the Act may not assert a cause of action for unseaworthiness. Thus, so called "Sieracki" seamen may no longer assert an unseaworthiness cause of action. T. Schoenbaum, § 5-4 at 171.
[7] Norris suggests that the doctrine of unseaworthiness should be extended to non-seaman passengers aboard a vessel, stating:

The enlightened view of the present day courts in demanding that a vessel be reasonably fitand its interpretation of what is reasonable fitnessshould apply to the passengers carried in those ships if for no other reason than that passengers should be accorded relief now given to cargo. M. Norris, The Law of Maritime Personal Injuries, § 3:25 at 102.
[8] See Katz v. Cie Generale Transatlantique, 271 F.2d 590 (4th Cir.1959) (plaintiff injured foot on door sill of ship, carrier liable because of negligent construction and inadequate lighting); Moore-McCormack Lines, Inc. v. Russak, 266 F.2d 573 (9th Cir.1959) (plaintiff injured while dancing on ballroom floor of ship because of slippery condition caused by smashed grape on floor; carrier liable and owes highest degree of care to passenger); Moore v. American Scantic Line, Inc., 121 F.2d 767 (2d Cir.1941) (plaintiff injured while skipping rope on bridgedeck when foot struck uneven spot on deck; defendant liable because owes duty to exercise very high degree of care for safety of passengers); Counts v. Lafayette Crewboats, Inc., 622 F.Supp. 299 (W.D.La.1983) (plaintiff injured due to his own negligence while attempting to step from platform onto crewboat).
[9] Justice Stewart, writing for the Court in Executive Jet heavily criticized the inclusion of aircraft in admiralty law and stated:

The law of admiralty has evolved over many centuries, designed to handle problems of vessels relegated to ply the waterways of the world, beyond whose shores they cannot go. That law deals with navigational rulesrules that govern the manner and direction those vessels may rightly move upon the waters. When a collision occurs or a ship founders at sea, the law of admiralty looks to those rules to determine fault, liability, and all other questions that may arise from such a catastrophe. Through long experience, the law of the sea knows how to determine whether a particular ship is seaworthy, and it knows the nature of maintenance and cure. It is concerned with maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage.
Rules and concepts such as these are wholly alien to air commerce, whose vehicles operate in a totally different element, unhindered by geographical boundaries and exempt from the navigational rules of the maritime road. The matters with which admiralty is basically concerned have no conceivable bearing on the operation of aircraft, whether over land or water.... Although dangers of wind and wave faced by a plane that has crashed on navigable waters may be superficially similar to those encountered by a sinking ship, the plane's unexpected descent will almost invariably have been attributable to a cause unrelated to the seabe it pilot error, defective design or manufacture of airframe or engine, error of a traffic controller at an airport, or some other cause; the determination of liability will thus be based on factual and conceptual inquiries unfamiliar to the law of admiralty. 409 U.S. at 269-70, 93 S.Ct. at 505.
[10] Section 688(b) of the Jones Act (46 U.S.C.A. § 688(b)) states:

(1) No action may be maintained under subsection (a) of this section or under any other maritime law of the United States for maintenance and cure for damages for the injury or death of a person who was not a citizen or permanent resident alien of the United States at the time of the incident giving rise to the action if the incident occurred
* * * * * *
(B) in the territorial waters or waters overlaying the continental shelf of a nation other that the United States, its territories, or possessions.
(2) The provisions of paragraph (1) of this subsection shall not be applicable if the person bringing the action establishes that no remedy was available to that person
(A) under the laws of the nation asserting jurisdiction over the area in which the incident occurred; or
(B) under the laws of the nation in which, at the time of the incident, the person for whose injury or death a remedy is sought maintained citizenship or residency.
[11] After the district court judgment in favor of plaintiff was rendered and after the delay for suspensive appeal had run, upon motion to the court Industrial deposited the amount of the judgment plus accrued interest into the registry of the court. This procedure is a jurisprudential creation which allows a defendant cast in judgment to stop the accrual of legal interest. LaGraize v. Bickham, 391 So.2d 1185 (La.App. 4th Cir.1980). The trial judge granted Industrial's motion without a contradictory hearing. Plaintiff appealed to increase the award and Industrial, in its answer, contended that the deposit of money into the registry effectively terminated the accumulation of legal interest on the amount of the judgment. The court of appeal, in its decision of April 18, 1990, concluded that the trial judge erred in granting the motion ex parte and remanded this issue to the trial court to determine if the conditions of LaGraize were met.