| WALTZER, Judge.
Pool Company appeals a judgment dismissing its indemnity claims against Tidewater Marine Inc., and its insurer, Pental Insurance Company. Pool also appeals the judgment awarding Amoco attorney’s fees and Tidewater the amount paid by Tidewater to its injured employee for maintenance and cure.
STATEMENT OF FACTS AND HISTORY OF THE CASE
Pursuant to a Time Charter agreement executed on 30 May 1985, Amoco chartered a vessel, the “M/V Cañonero,” from Tidewater. Tidewater employed Rubin Lyons as a deckhand on the “M/V Cañone-ro.” On 12 December 1996, Rubin Lyons, Jr. was injured on the vessel, when Pool’s employee, operating a crane on Amoco’s platform, dropped a personnel basket on Lyons. At the time of the accident Pool *571 had contracted with Amoco to serve as its drilling contractor.
Lyons sued Tidewater, his employer, for maintenance and cure and Amoco and Pool for negligence. Pool filed a cross-claim against Tidewater for defense, indemnity and insurance coverage, and a third party claim against Tidewater’s insurer, Pental, for defense and indemnity as an additional assured of Tidewater’s policy. Pool alleged that the Time Charter Agreement between Amoco and | ¡/Tidewater required Tidewater and its insurer to defend and indemnify Pool for Lyons’ damages.
Amoco and Tidewater filed cross-claims against Pool for contribution and indemnity for Pool’s negligence. Amoco sought attorney’s fees and expenses, and Tidewater demanded reimbursement for benefits paid to Lyons. Pool argues that Tidewater waived all rights of subrogation against Amoco and its drilling contractor, Pool, in the Time Charter agreement.
Section 7(c) of the Time Charter agreement provides:
OWNER [Tidewater] agrees that the above insurance policies will he endorsed to name CHARTERER [Amoco], its joint interest owners (if any), the drilling contractor [Pool], and any other party or parties for whom the vessel is rendering services, as co-assureds. OWNER further agrees that the above insurance policies shall contain provisions that the naming of CHARTERER, its joint interest owners (if any), the drilling contractor and any other party or parties for whom the vessel is rendering services as additional or co-assured shall not prevent recovery in any situation in which recovery would have been available had they not been named additional assureds. The coverage afforded to such additional assureds or co-assureds, hereunder shall be in all respects and in all events identical with the coverage afforded to the OWNER of the vessel(s) named herein, and any limitation of coverage to loss, damage, or expense “as owner” or any other provision herein inconsistent with the coverage of such additional assureds identically with OWNERS shall, as to such additional assureds be deemed deleted.
(Emphasis added.) Furthermore, Section 7(d) of the Time Charter Agreement provides that:
To eliminate controversies, the expense and inconvenience thereto, as between OWNER, CHARTERER, its joint owners (if any), the drilling contractors and/or other contractors of CHARTERER and other named co-assureds, it is agreed that the underwriters, insurers and insurance carriers of OWNERS shall not have any rights of subrogation (equitable or by assignment, express or implied, loan, receipt or otherwise) against CHARTERER, its joint owners (if any), its contractors, and any other named co-assured, their insurers or other vessels owned, chartered or operated by any of the parties referred to herein, and the rights of subrogation in favor of or against any of the above named are expressly waived. All parties of insurance secured 13and maintained by OWNERS shall be suitably endorsed to effectuate this waiver of subrogation.
On 24 July 1998, the trial court dismissed Lyons’ claims against Amoco by summary judgment. The trial court found that Amoco was not negligent regarding Lyons’ accident.
Tidewater and Pool settled with Lyons, reserving their cross-claims. On 18 June 1999, the trial court dismissed both Pool’s cross-claim against Tidewater and its third party demand against Pental. The trial court also awarded Amoco its attorney’s fees against Pool and awarded Tidewater *572 the amount paid for maintenance and cure to Lyons against Pool.
FIRST ASSIGNMENT OF ERROR: The trial court erred in awarding Tidewater damages against Pool, although Tidewater waived all rights of subrogation against Amoco and its “drilling contractor” under Section 7(d) of the Time Charter Agreement between Tidewater and Amoco.
Tidewater’s cross-claim against Pool demanded subrogation for any damages paid to Tidewater’s injured employee, Lyons. Lyons sued Tidewater for maintenance and cure, since Tidewater employed Lyons at the time of the accident. No party sued Tidewater for negligence. This claim is not a claim for contractual indemnity. Pool argues that federal law controls and that Tidewater has waived any right to subro-gation from Pool in the Time Charter Agreement. Tidewater argues that Louisiana law applies and that the waiver is void under the Louisiana Oilfield Anti-Indemnity Act.
What legal effect the pertinent provisions of the Time Charter agreement have depends in large part on whether federal law or state law controls. The United States' Constitution grants to federal courts jurisdiction in all “cases of | ¿admiralty and maritime jurisdiction.” U.S. Const, art. Ill, section 2. However, state courts have concurrent jurisdiction by virtue of the “savings to suitors” clause. 25 U.S.C.A. § 1333.
It is well settled that by virtue of the savings clause “a state, ‘having concurrent jurisdiction, is free to adopt such remedies, and to attach to them such incidents as it sees fit’ so long as it does not attempt to make changes in the substantive maritime law.” (citations omitted) Green v. Industrial Helicopters, Inc., 91-0859 & 91-0860 (La. 1/17/92); 593 So.2d 634, 637. As a general proposition, “[a] maritime claim brought in the common law state courts ... is governed by the same principles as govern actions brought in admiralty, i.e., by federal maritime law.” Id., quoting Powell v. Offshore Navigation, Inc., 644 F.2d 1063, 1065 n. 5 (5th Cir.1981). Since the general maritime law is not a complete or all inclusive system, a federal court may adopt state statutory law and common law principles as the federal admiralty rule. State law and regulations may also supplement federal maritime law when “there is no conflict between the two systems of law, and the need for uniformity of decisions does not bar state action.” Id.
However, federal law and Louisiana law do conflict on the enforcement of contracts of indemnity and waivers of sub-rogation. Unlike under Louisiana law, indemnity provisions in maritime contracts are generally valid and enforceable. Rodrigue v. LeGros, 89-2828 p. 4 (La.6/4/90); 563 So.2d 248, 251. An employer, or its insurer, may assert its federal non-statutory right of subrogation or indemnification from negligent third parties for payments it has made to an injured employee, absent a waiver of subrogation. Fontenot v. Chevron, U.S.A., Inc., 95-1425, p. 12 (La.7/2/96); 676 So.2d 557, 568, concurring opinion of Justice Kimball at p. 11, citing Francis J. Gorman, Indemnity and Contribution Under Maritime Law, 55 Tul.L. Rev. 1165 (1981). “There is admiralty jurisdiction over claims for contribution and indemnity if jurisdiction exists over the underlying cause of action. If there is admiralty jurisdiction, the substantive and legal rights of the parties are determined by federal maritime law, not state law.” Id. quoting Schoenbaum, supra at § 5-18, p. 215 (2d ed. 1994).
To escape the effects of federal maritime law on its indemnity claims, Tidewater contends that the Time Charter Agree *573 ment is “collateral” to the Workover Contract between Pool and Amoco, and thus, is void under LSA R.S. 9:2780(B), the Louisiana Oilfield Anti Indemnity Act. Section B of LSA R.S. 9:2780 provides:
Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas or water, or drilling for minerals which occur in a solid, liquid gaseous or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.
Moreover, Section G of the LSA-R.S. 9:2780 provides:
Any provision in any agreement arising out of the operations, services, or activities listed in Subsection C of this Section of the Revised Statutes of 1950 which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance which would frustrate or circumvent the prohibition of this Section, shall be null and void and of no form and effect.
The trial court rendered judgment in favor of Tidewater against Pool for maintenance, cure, unearned wages and advances made to or on behalf of the plaintiff with interest. The Time Charter agreement was executed between Amoco and Tidewater on 30 May 1985, and the Workover Contract was executed between Pool and Amoco on 25 November 1996. Under the Workover Contract, Pool was |fito provide workover operations to Amoco, using a platform rig. The Workover Contract is governed by Louisiana law under a choice of law clause in the contract. Tidewater, through the Time Charter, provided vessel transportation services to both Amoco and its contractors, including Pool. We must decide whether federal law or Louisiana law governs the Time Charter agreement.
Lyons, a deckhand on the “MTV Cañone-ro,” was injured in an accident on a vessel. The parties do not contest that his claims were governed by federal maritime law. Although Lyons’ claims have been settled, both the underlying claims and Tidewater’s claims for subrogation and indemnity are governed by federal law. Therefore, there is no need to determine the effect of the Louisiana Oilfield Anti-Indemnity Act on the waiver of subrogation, since the Act has no application to the claims in this case. Louisiana law does not apply to either Lyons’ claims or the claims for indemnity or subrogation.
Neither this court nor the Louisiana legislature can adopt a rule that changes the applicable law, where a conflict exists between federal maritime law and state law. Because Lyons’ claims are, without contest, governed by federal maritime law, we must apply federal law to all claims for subrogation and indemnity. Fontenot, supra at 568. Because federal law and Louisiana law conflict regarding the enforcement of contracts of indemnity and waivers of subrogation under LSA-R.S.9:2780, we can not apply Louisiana law to invalidate the waiver of subrogation in the Time Charter agreement, when Tidewater’s claim for subrogation is governed by federal maritime law. Rodrigue, supra at 248. The parties do not argue that the waiver is invalid under federal maritime law. Tidewater waived all rights of indemnity and subrogation against Amoco and its drilling contractor, Pool, in the Time Charter agreement. For these reason, the trial |7court erred in applying Louisiana *574 law, voiding the waiver and awarding Tidewater damages against Pool.
SECOND ASSIGNMENT OF ERROR: The trial court erred in awarding Amoco damages against Pool.
Lyons, the injured plaintiff, sued both Pool and Amoco for negligence. Lyons sued Tidewater for maintenance and cure, since Tidewater was his employer. Amoco demanded defense and indemnity from both Pool and Tidewater. Eventually, Tidewater acquiesced to this demand and defended and indemnified Amoco. Pool did not. By summary judgment, all claims were dismissed against Amoco. That ruling is not a subject of this appeal.
After trial, the trial court rendered judgment in favor of Amoco and against Pool, awarding Amoco $6,713.26 in attorney’s fees pursuant to Meloy v. Conoco, Inc., 504 So.2d 833 (La.1987). In its Reasons for Judgment, the trial court quoted the Louisiana Supreme Court:
The Act [the Louisiana Oilfield Anti-Indemnity Act] only prohibits indemnity for cost of defense where there is “negligence or fault (strict liability) on the part of the indemnitee.” The Act does not apply where the indemnitee is not negligent or at fault.
Meloy, supra at 839.
Amoco demanded defense and indemnification from Pool. Pool argues that Tidewater defended Amoco, that Tidewater waived all rights of subrogation from Pool under the Time Charter agreement, and thus, Tidewater has waived its right to subrogation for expenses in defending Amoco. Tidewater argues that the waiver is invalid under the Louisiana Oilfield Anti-Indemnity Act.
In the Time Charter agreement, Tidewater waived all rights of subrogation against Amoco and its drilling contractor, Pool. For the reasons discussed in the | aFirst Assignment of Error, we can not apply Louisiana law to invalidate the waiver. Tidewater’s claim is one of subrogation. Tidewater, who defended Amoco, is subrogated to the rights of Amoco in demanding defense and indemnification from Pool. Tidewater waived all rights of subro-gation against Pool. The parties do argue that this waiver is invalid under federal law, which we must apply for the above reasons. For these reasons, we reverse the judgment of the trial court, awarding Tidewater its expenses for defending Amoco.
THIRD ASSIGNMENT OF ERROR: The trial court erred in dismissing Pool’s claims against Tidewater and Pental for indemnification and insurance coverage.
Pool sought to recover from Tidewater and its insurer both cost of defense and indemnity. Pool sought insurance coverage from Pental as an additional assured on Tidewater’s policy. The trial court dismissed this claim. The trial court reasoned:
The insurance policy between Pental and Tidewater which Pool became an additional insured under plainly states,
The so-called Other Than Owner, As Owner and/or Other insurance clauses contained in this Policy shall not apply in respect of the Named Assureds and shall also be deemed deleted as may be required by contract in respect of Additional Assureds. This insurance shall be deemed primary insurance as required by contract. Notwithstanding the above, this clause shall not extend the insuring conditions beyond vessel operations.”
In Lanasse v. Travelers Insurance Company, 450 F.2d 580 (5th Cir.1971), the *575 Court in discussing vessel operations held:
There must be at least some causal operational relation between the vessel and the resulting injury. The line may be a wavy one between coverage and non-coverage, especially with industrial complications in these ambiguous amphibious operations plus those arising from the personification of the vessel as an actor in a suit |9in rem. But where injury is done through non-vessel operations, the vessel must be more than the inert locale of the injury.
The trial court found that Lyons was not injured in the course of “vessel operations.” Lyons was hit by a basket dropped by a crane on the “M/V Cañone-ro.” We find nothing in the record to persuade us that this finding was in error.
Pool argues both that the phrase, “vessel operations,” in the insurance contract is ambiguous and that Lanasse is distinguishable and inapplicable. Although the phrase is not explicitly defined in the insurance contract, we do not believe that this fact alone makes the exclusion ambiguous. Moreover, Pool’s argument that Lanasse is distinguishable lacks merit. The court in Lanasse discussed both an indemnity contract and an insurance contract. We are confronted with a similar set of facts. We are confronted with both an indemnity provision in a Time Charter agreement and the collateral insurance policy. The language from Lanasse, upon which the trial court relied, involved coverage afforded by the applicable P & I policy. Both the court in Lanasse and this court are merely giving effect to the general language of specific contracts. Pool argues that the deletion of the “as owner” provision from the insurance policy, meaning that the insurance coverage is limited to parties acting “as owner,” requires Pen-tal to insure the assured in any situation, regardless of whether their acting as owner or otherwise. Apparently, Pool believes that the deletion of this specific limitation necessitates coverage, regardless of the specific language, including other limitations, of the policy. This assignment is without merit. We find no error in the trial court’s finding that Pool’s actions as a crane operator that caused the harm did not constitute “vessel operations,” as required for coverage under Pental’s Iminsurance policy. We affirm the judgment dismissing Pool’s claims against Tidewater and its insurer, Pental.
CONCLUSION
We reverse the judgment, in part, and dismiss Tidewater’s claims against Pool, since under federal maritime law, Tidewater validly and expressly waived all rights of subrogation in the Time Charter agreement. We affirm the judgment finding that Pool’s negligence in operating the crane from the platform did not constitute “vessel operations,” as required by Pen-tal’s policy and dismissing Pool’s claims against Tidewater and its insurer, Pental.
AFFIRMED IN PART AND REVERSED IN PART.