833 So.2d 528 (2002)
Mary Jo WALL, et al.
v.
CALCASIEU PARISH POLICE JURY.
No. 02-451.
Court of Appeal of Louisiana, Third Circuit.
December 11, 2002.
*529 Robert C. McCall, Baggett, McCall, Burgess & Watson, Lake Charles, LA, for Defendants/Appellants, Mary Jo Wall, et al.
Allen L. Smith, Jr., Plauche, Smith & Nieset, Lake Charles, LA, for Defendant/Appellee, Calcasieu Parish School Board.
Court composed of ULYSSES GENE THIBODEAUX, OSWALD A. DECUIR and JIMMIE C. PETERS, Judges.
THIBODEAUX, Judge.
This matter arises out of the death of Kenneth C. Wall and originally came to us by application for supervisory writs filed by plaintiffs, Mary Jo Wall, the deceased wife, and her minor children, Mallory Blair Wall and Julia Madison Wall, against the Calcasieu Parish Police Jury (CPPJ). Kenneth died as a result of an accident that occurred while he was swimming in a designated swimming area in Prien Lake when he was struck by an unidentified *530 boat. In the trial court, the Walls filed a motion for summary judgment contending that general maritime law was applicable. The trial court ruled that Louisiana law was applicable to the case. For the following reasons, we find that general maritime law is applicable and remand for further proceedings.

I.

FACTS
On September 6, 1999, Kenneth was swimming in a designated swimming area in Prien Lake off of the Israel LaFleur beach south of Interstate 210 in Calcasieu Parish, Louisiana. While swimming he was struck by an unidentified watercraft. The autopsy report states "Kenneth Wall, a 39 year old white male died as a result of chop-type injuries of the head from a boat's propeller." There is a boat launch in the Israel LaFleur Park (LaFleur Park) located north of the swimming area. Another boat launch is located on Prien Lake less than a mile southeast of the swimming area. There is also a private marina at the south end of Prien Lake.
At the time of the accident, the swimming area was separated from the non-swimming area by approximately six buoys. The defendant admits that there should have been twelve to thirteen buoys in the area. Thus, there were gaps in the buoy line on the date that Kenneth was killed.
Wall brought suit against the CPPJ, the owner and operator of the park. In her suit, Wall alleged that the buoy system was improperly designed in that it failed to use a floating line to connect the buoys together. Further, Wall alleged that the buoy system was improperly maintained since the missing buoys created large gaps in the line of buoys. The CPPJ admits that Prien Lake, where the accident occurred, qualifies as a body of "navigable water." At the motion for summary judgment hearing, Wall asserted that this case, involving a watercraft killing a swimmer in navigable waters, is a maritime tort and the applicable law is admiralty. To the contrary, the CPPJ argues that Wall's claim sounds in negligence for the CPPJ's alleged failure to properly delineate the swimming area and warn of possible dangers within that swimming area. Therefore, Louisiana state substantive law applies.

II.

ISSUE
The sole issue in this writ application is whether federal maritime law applies to a non-seafarer who was killed while swimming in a designated swimming area when a watercraft, traveling in navigable waters, struck him.

III.

LAW AND DISCUSSION

Admiralty Jurisdiction
In Green v. Industrial Helicopters, Inc., 593 So.2d 634, 636-37 (La.1992), the supreme court stated:
Generally, federal maritime jurisdiction is invoked whenever an accident occurs on the high seas and in furtherance of an activity bearing a significant relationship to a traditional maritime activity. Offshore Logistics v. Tallentire, 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 1986); Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972).
The judicial power of the United States extends "to all Cases of admiralty and maritime Jurisdiction; ..." U.S. Constitution, Art. III, § 2. Rodrigue v. LeGros, 563 So.2d 248, 251 (La.1990). State courts, *531 however, have concurrent jurisdiction by virtue of the "savings to suitors" clause of the Judiciary Act of 1789. 28 U.S.C.A. § 1333. Further, a maritime claim brought in a state court is governed by the same principles as actions brought in admiralty, i.e., by federal maritime law. Green, 593 So.2d 634. Citing Schoenbaum, Admiralty and Maritime Law § 4-1 at 123 (1987), the Green court stated: "State law and regulations may also supplement federal maritime law when `there is no conflict between the two systems of law, and the need for uniformity of decision does not bar state action.'" Id. at 637.
In Thomey v. Weber Marine, 01-0153 (La.App. 5 Cir. 5/30/01); 791 So.2d 135, 138, the fifth circuit, facing the issue of whether admiralty jurisdiction was applicable where the plaintiff injured himself when he slipped while attempting to board a barge's gangway, noted:
The traditional test for admiralty tort jurisdiction was based solely on whether the tort occurred on navigable waters. However, jurisdiction was subsequently extended to injuries caused by a vessel which were consummated on land by the Admiralty Extension Act of 1948, 46 U.S.C. section 740. Further the limits of admiralty jurisdiction have been further established by the United States Supreme Court in a trilogy of cases. In Executive Jet Aviation, Inc. v. City of Cleveland, Ohio, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), a case involving an airplane crash into navigable waters, the Court provided a two part test for maritime tort jurisdiction known as the "locality plus nexus" test, which provides that for a tort to fall under admiralty jurisdiction of the court, it must occur on or over navigable waters and the tort must "bear a significant relationship to traditional maritime activity." Id., 93 S.Ct. at 504.
(Emphasis in original).
The application of Executive Jet was extended beyond the context of aviation in Foremost Insurance Co. v. Richardson, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), a case that involved the collision of two pleasure, as opposed to commercial, boats. In Foremost, the court held the maritime activity involved need not be exclusively commercial to fall under admiralty jurisdiction. After Foremost, the activity need only have the potential to impact commerce. The more recent case in this trilogy of admiralty cases is Sisson v. Ruby, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990), a case involving a fire aboard a pleasure boat that spread to other boats and a nearby marina. With respect to the locality analysis, the Supreme Court held that admiralty jurisdiction extended to cases where the tort occurs on land, provided that the tort was at least caused by a vessel on navigable waters. Furthermore, the facts that give rise to the wrong must have a significant connection to maritime activity. This type of inquiry requires the court to determine whether "the general features of the type of incident involved" have a "potentially disruptive impact on maritime commerce," and secondly, "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." Id., 497 U.S. 358, 110 S.Ct. at 2896, 2897.
Further instruction regarding the second nexus question provided in Sisson was announced in Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024, (1995). There, the Supreme Court stated that when a court assesses the general character of the incident it should be "within a class of incidents that posed *532 more than a fanciful risk to commercial shipping." Id., 115 S.Ct. at 1051. In Grubart, the court was presented with a claim against both a maritime defendant and a land-based defendant for negligent activity that occurred on navigable waters. The Court concluded that both defendants were subject to admiralty jurisdiction.
In the present case, the CPPJ does not contest the fact that Kenneth's death occurred in navigable waters or that his death was caused by a watercraft while in the navigable waters of Prien Lake. The CPPJ argues that this case is not a maritime case because it is a claim by "the survivors of a swimmer against the [CPPJ] for its alleged failure [to] properly warn of dangers of a delineated swim area and in failing to safely delineate that swim area." In other words, the CPPJ argues that the survivors' claim against it has no connection to traditional maritime activity. We disagree.
In Sisson, the Court focused on the activity giving rise to the incident and not the claim asserted by the plaintiffas the CPPJ would have this court do in the present caseto determine the maritime connection. Applying the Sisson analysis as noted above, we conclude that a sufficient maritime connection is present in the instant case. Kenneth was killed while swimming in navigable waters when struck by the propeller of a boat which apparently did not see him. There is no dispute that a boat constitutes a vessel in navigable waters. The failure of the CPPJ to provide the proper number of buoys in the proper manner (connected by floating rope) delineating where vessels may or may not enter, exposes persons who are swimming to injury and damage to boats while boating in areas where swimmers and boaters assume they are safe and unlikely come into contact with each other. The safe use of the navigable lake by both swimmers and boaters is essential and, if unsafe, has a strong potential to disrupt maritime activities due to rescue and search efforts as well as the lack of knowledge of boundaries that cannot be crossed. Under the circumstances presented here, despite the fact that whatever fault attributed to the CPPJ may have been land-based, we conclude that the second requirement of a maritime connection has been satisfied in this case.

Choice of Law
We have already determined that the activity causing Kenneth's injury and death is significantly related to traditional maritime activitycommercial and/or pleasure boating in navigable watersand that admiralty jurisdiction is appropriate in the present case. It is well established that maritime law applies in "those cases where the subject matter of the controversy bears the type of significant relationship to traditional maritime activities necessary to invoke admiralty jurisdiction." Laredo Offshore Constructors, Inc. v. Hunt Oil Co., 754 F.2d 1223, 1231 (5th Cir.1985) (relying upon Kossick v. United Fruit Co., 365 U.S. 731, 736-38, 81 S.Ct. 886, 890-92, 6 L.Ed.2d 56, (1961)); see Watson on Behalf of Watson v. Massman Const. Co., 850 F.2d 219, 220-21 (5th Cir. 1988) (holding that admiralty jurisdiction applies to a tort dispute if either the injured party or the alleged tortfeasor is a traditional maritime actor or at least if either of those parties is performing a traditional maritime activity). "With admiralty jurisdiction comes the application of substantive admiralty law." East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864, 106 S.Ct. 2295, 2298-99, 90 L.Ed.2d 865 (1986). Uniformity of application throughout the nation is the central purpose and feature of this exclusive jurisdiction. See, The Lottawanna (Rodd v. Heart), 88 U.S. (21 Wall.) 558, 575, 22 *533 L.Ed. 654 (1874). Where there is no uniform federal rule, courts may adopt state law "by express or implied reference or by virtue of the interstitial nature of federal law." Palestina v. Fernandez, 701 F.2d 438, 439 (5th Cir.1983); See also, Sullivan v. Rowan Companies, Inc., 952 F.2d 141, 148 (5th Cir.1992). "However, to the extent that state law radically differs from general principles recognized elsewhere, it should not be incorporated into maritime jurisprudence." Royal Insurance Co. v. Smatco Indus. Inc., 201 B.R. 755 (E.D.La. 1996).
The CPPJ relies on Yamaha Motor Corporation, U.S.A. v. Calhoun, 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996) for the proposition that state law applies in the case of a wrongful death of a non-seaman that occurs in navigable territorial waters. In Yamaha, a twelve-year-old girl was killed while using a jet ski for recreational purposes when she slammed into an anchored vessel in the waters off of the frontage of a hotel. At the time of death, she was vacationing with family friends at a beach-front resort in Puerto Rico. The girl's parents sought to recover from the manufacturer of the jet ski, alleging that it was defectively designed, pursuant to state laws of survival and wrongful death statutes. Unlike the defendant in the present case that desires the use of state law, the defendant in Yamaha contended that the state remedies could not be applied because the girl died on navigable waters; thus, federal maritime law controlled to the exclusion of state law. The court adhered to the long-standing rule that "state remedies have been applied in accident cases of this ordermaritime wrongful-death cases in which no federal statute specifies the appropriate relief and the decedent was not a seaman." Id., 516 U.S. at 202, 116 S.Ct. at 622. Thus, in Yamaha, state law was applied because Congress had not supplied remedies in such a situation. Yamaha dealt only with the type of damages available to a non-seaman who died in territorial navigable waters, after a determination of liability. In the present case, the CPPJ seeks to apply Louisiana state law for the determination of both liability as well as the relief available. Yamaha allowed the plaintiffs in that case to supplement, not supplant, general maritime law in the case of the death of a non-seaman in navigable waters to allow them whatever damages available pursuant to state law. See, Quinn v. St. Charles Gaming Co., 01-1038 La.App. 3 Cir. 2/6/02); 815 So.2d 968, writ denied, 02-694 (La.4/12/02); 813 So.2d 412, see also, Liner v. Dravo Basic Materials Co., 162 F.Supp.2d 499 (E.D.La.2001) (where the court denied the defendant's motion for partial summary judgment seeking to strike the plaintiffs' claims for loss of consortium and punitive damages. The non-seamen plaintiffs had suffered injury as a result of the allision of their recreational vessel with an unmarked sunken barge in state territorial waters. Finding that Yamaha controlled, the court held that the plaintiffs' claims were governed by general maritime law, but would be supplemented by Louisiana law). We find that under the facts of this casedeath of a non-seaman on navigable waters bearing a close nexus to traditional maritime activitythe claims are governed by general maritime law as supplemented by applicable state laws where state law provides a remedy not available under general maritime law.

IV.

CONCLUSION
Accordingly, for the reasons assigned, we conclude that both requirements necessary to confer admiralty jurisdiction have been satisfied in this case. The trial court's ruling denying Wall's motion for *534 summary judgment was improper. This case falls under the court's admiralty jurisdiction and should be governed by general maritime law. Therefore, the judgment of trial court is hereby reversed. Appellant, Calcasieu Parish Police Jury, shall bear all costs of this writ.
REVERSED. WRIT GRANTED AND MADE PEREMPTORY. REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS.