CW 03-816

BRIAN T. SHIELDS, ET UX.

VERSUS

BAKER HUGHES, INC., ET AL.


**********

ON APPLICATION FOR SUPERVISORY WRITS
SIXTEENTH JUDICIAL DISTRICT COURT,
PARISH OF ST. MARTIN, NO. 63549,
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE

**********

**JIMMIE C. PETERS
JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Oswald A. Decuir, and Jimmie C. Peters, Judges.

WRIT DENIED.

Decuir, J., dissents with written reasons.

Richard A. Chopin
Jason P. Foote
Chopin, Wagar, Cole, Richard, Reboul & Kutcher, LLP
3850 North Causeway Boulevard
Metairie, LA 70002
(504) 830-3838
COUNSEL FOR DEFENDANTS/APPLICANTS:
    Baker Hughes, Inc., et al.

Elwood C. Stevens, Jr.
Attorney at Law
P. O. Box 2626

**Morgan City, LA  70381**
**(985) 384-8611**
**COUNSEL FOR PLAINTIFFS/RESPONDENTS:**
**Brian T. Shields**
**Claudette Pereira Shields**

PETERS, J.

The issue in this application for supervisory writs is whether the spouse of a non-seaman injured offshore worker can recover nonpecuniary loss of consortium damages arising from the worker's injuries. The defendants raised the issue in a motion for summary judgment, which the trial court rejected. We granted the writ application for the sole purpose of calling the matter up for consideration of the issue on the merits. For the following reasons, we now deny the writ application and remand the matter to the trial court for further proceedings consistent with this opinion.

## DISCUSSION OF THE RECORD

The plaintiffs in this matter are Brian T. Shields and his wife, Claudette Pereira Shields. In their suit for damages filed under the general maritime law, the Shields named several defendants,[1] including Baker Hughes, Inc.; Baker Atlas, a division of Baker Hughes, Inc.; Baker Hughes Inteq n/k/a Baker Hughes Oilfield Operations, Inc.; Western Atlas, Inc.; and Western Atlas International, Inc. (referred to collectively as "the Baker Group"). The plaintiffs alleged in their petition that Mr. Shields, a Halliburton Energy Services employee, was injured on March 19, 2000, while working on the "Noble Jim Thompson," a movable offshore drilling unit (drilling unit) located on the outer continental shelf off the coast of Louisiana. The accident occurred while Mr. Shields and employees of the Baker Group were involved in connecting a Halliburton sump packer to a tool to be placed in the drilling hole on the drilling unit. The Shields asserted that while the Baker employees were moving the sump packer with the use of an e-line, "suddenly and without warning" the Baker e-line operator caused the sump packer to be moved upward too quickly. The Shields

---

[1]Because issues pertaining to other defendants are not currently before us on writ of review, we have not provided either a factual or procedural background regarding those defendants.

alleged that this action caused Mr. Shields to lose his balance, fall backward, and straddle an I-beam affixed to the rig floor, resulting in injuries to Mr. Shields.

In their suit, Mr. Shields sought general and special damages and Mrs. Shields sought damages for loss of consortium under the general maritime law. Subsequently, the Baker Group filed a motion for partial summary judgment, seeking dismissal of Mrs. Shields' claim for nonpecuniary loss of consortium damages. The trial court denied the Baker Group's motion, and this writ application followed.

**OPINION**

Louisiana Code of Civil Procedure Article 966(B) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.

It is undisputed that Mr. Shields was a non-seaman offshore worker injured in international waters, that he was not an employee of the Baker Group, and that the Baker Group was not the owner of the drilling unit. Thus, the sole issue on review is whether, as a matter of law, the wife of a non-seaman offshore worker injured in international waters is permitted to recover nonpecuniary damages for loss of consortium under the general maritime law against a non-employer defendant.

The Baker Group asserts that such a claim "is clearly prohibited by more than a decade of federal and state jurisprudence following the United States Supreme Court's decision in *Miles v. Apex Marine Corporation*, 498 U.S. 19, 111 S.Ct. 317 (1990)." The Shields assert that "if Congress has spoken then a court sitting in admiralty is obliged to follow that Congressional act. . . . [I]f Congress has not spoken, then it must be presumed that Congress never intended to preclude the availability of a certain remedy and it is, therefore, available."

2

Clearly, the *Miles* Court has instructed that "there is no recovery for loss of society [a nonpecuniary loss] in a general maritime action for the wrongful death of a Jones Act seaman." *Id.* at 33, 111 S.Ct. at 326. However, we do not find the reach of *Miles* to be as pervasive as suggested by the Baker Group.

In *Warren v. Sabine Towing & Transportation Co.*, 01-573 (La.App. 3 Cir. 10/30/02), 831 So.2d 517, *writs denied*, 02-2926, 02-2927, 02-2936 (La. 2/14/03), 836 So.2d 116, 117, this court recently considered the application of *Miles* in the context of the death of a seaman and the resultant wrongful death claim for nonpecuniary damages against certain non-employer manufacturers. In doing so, we stated:

> In *Miles*, a seaman was killed by a fellow crew member while the ship on which they served was docked. The seaman's mother sued the ship's operators, the charterer, and the ship's owner, alleging negligence under the Jones Act for failure to prevent the assault on her son and breach of the warranty of seaworthiness under the general maritime law. She sought damages for loss of society, among other damages.
>
> While recognizing that there is a general maritime cause of action for the wrongful death of a seaman, the *Miles* Court found a limitation on the remedies available under such a cause of action. Specifically, the Court explained that DOHSA, applicable to deaths on the high seas, *explicitly* forecloses recovery for nonpecuniary loss such as loss of society. Additionally, while acknowledging that the Jones Act does not *explicitly* limit damages to any particular form, the Court considered FELA (interpreted early on as providing for only pecuniary damages), which Congress incorporated unaltered into the Jones Act, and concluded that "Congress must have intended to incorporate the pecuniary limitation on damages as well." *Id.* at 32, 111 S.Ct. at 325. Thus, the Court held that "[t]here is no recovery for loss of society in a Jones Act wrongful death action." *Id.* Moreover, concerning the plaintiff's cause of action under the general maritime law for unseaworthiness, the Court concluded: "It would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault [unseaworthiness claim] than Congress has allowed in cases of death resulting from negligence [Jones Act claim]." *Id.* at 32-33, 111 S.Ct. at 326. Accordingly, the Court concluded that there is likewise no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman.

*Id.* at 536.

3

Although the decedent in *Warren* was also a seaman and his widow sought wrongful death nonpecuniary damages, we nevertheless found it necessary to consider the relationship between the decedent and the non-employer/manufacturer defendants in determining the remedies available to the plaintiff. We found crucial in *Warren* that, "[w]hile [the decedent] was a seaman covered by the Jones Act vis-à-vis his employer, he was not a seaman covered by the Jones Act vis-à-vis the manufacturer-defendants in this case." *Id.* at 537. We explained:

> In the instant case, [the decedent] was clearly a Jones Act seaman for purposes of his employment with [his employer]. However, that is where the similarity with *Miles* ends. [The widow's] cause of action for wrongful death damages under the Jones Act or the general maritime law for unseaworthiness was no longer extant after her settlement with [the employer]. All that remained after that settlement was a garden-variety wrongful death cause of action under the general maritime law for third-party fault for failure to warn. *Miles* did not explicitly address the remedies available under such circumstances, nor do we find that it addressed that issue implicitly. Thus, we do not find that *Miles* precludes the application of state-law wrongful death remedies, including nonpecuniary damages.

*Id.* at 536 (footnote omitted).

In that case, the cause of action against the non-employer manufacturers occurred in territorial waters. Accordingly, we ultimately determined that the United States Supreme Court's decision in *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 116 S.Ct. 619 (1996), allowed application of state-law wrongful death remedies, including nonpecuniary damages, under the specific facts of *Warren*.

As in *Warren*, at the very least the nature of Mr. Shields' relationship with the Baker Group removes Mrs. Shields' claim for nonpecuniary damages from the preclusive effect of *Miles*. However, unlike *Warren*, this cause of action did not arise in territorial waters. Still, in *Green v. Industrial Helicopters, Inc.*, 593 So.2d 634, 638 (La.1992), *cert. denied*, 506 U.S. 819, 113 S.Ct. 65 (1992), the Louisiana Supreme

4

Court instructed that "a Louisiana state court should respect Louisiana law unless there is some federal impediment to application of that law contained in federal legislation or a clearly applicable rule in the general maritime law." In fact, the court explained: "As a matter of logic and legally permissible principle, Louisiana may afford a remedy not traditionally found in the maritime law, provided that the remedy neither conflicts with substantive maritime law nor impermissibly interferes with the requirement of uniformity." *Id.* at 639.

As set forth above, the Jones Act is not implicated vis-à-vis the Baker Group because the Baker Group was not Mr. Shields' employer and because Mr. Shields was not a seaman. Further, the Baker Group was not the owner of the drilling unit such that the Shields' claim against the Baker Group is not for unseaworthiness. Additionally, because this is a personal injury and not a wrongful death claim, DOHSA is not implicated. Also, while the Shields dispute that the LHWCA is applicable to this case, 33 U.S.C.A. § 933(a) and (i) of the LHWCA expressly preserves claims for damages against third persons. We are aware of no federal impediment to the application of state law or a clearly applicable rule in the general maritime law that would preclude application of Louisiana's loss of consortium remedy to Mrs. Shields.

Further, we do not find in this case that the application of Louisiana's loss of consortium remedy interferes with the requirement of uniformity. In *Green*, the supreme court observed: "An offshore worker's employment activities have no 'direct concern' with maritime shipping or commerce. The U.S. Supreme Court has stated that work related to offshore oil and gas exploration is not 'maritime employment'. *Herb's Welding Inc. v. Gray*, 470 So.2d 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985)." *Green*, 593 So.2d at 643 (citation omitted). The *Green* court concluded that Congress

was not insistent on uniformity in the maritime law regarding offshore exploration and drilling.

Nevertheless, the Baker Group interposes our recent decision of *Bertrand v. Air Logistics, Inc.*, 01-1655 (La.App. 3 Cir. 6/19/02), 820 So.2d 1228, as "confirm[ing] the general rule that has been prevalent through the federal courts of Louisiana: **non-pecuniary damages such as loss of consortium claims are not recoverable for injuries that occur outside of territorial waters, regardless of whether the injured party is a seaman or longshoreman.**"

In *Bertrand*, the plaintiff was employed by an oil and gas company as a drilling supervisor, which position required him to travel among drilling platforms in the Gulf of Mexico. As he was being transported by helicopter, the helicopter experienced a loss of power, requiring the pilot to land in the Gulf. As a result, the plaintiff sustained back injuries. The plaintiff sued the helicopter company and the engine company. Unfortunately, after filing suit the plaintiff committed suicide. His wife, son and daughter were substituted as plaintiffs, and they amended the petition to assert wrongful death and loss of consortium claims. Pursuant to a motion for partial summary judgment, the plaintiffs' claims for wrongful death and loss of consortium were dismissed. This court affirmed the dismissals. Regarding the dismissal of the claim for loss of consortium, this court found that the plaintiffs' argument did not adequately address *Miles*. In reaching that conclusion, this court stated: "The [*Miles*] Court . . . emphasized the need for uniformity in maritime law, indicating that unless a statute specifically provides for non-pecuniary damages they would not be allowed for death or injuries beyond territorial waters." *Id.* at 1234. In support of this position, this court cited federal jurisprudence in which courts have limited the recovery of nonpecuniary damages for injuries that have occurred beyond territorial

6

waters.

We respectfully disagree with our prior decision in *Bertrand*.  As set forth above, we do not find *Miles* to be all pervasive in all general maritime actions.  In fact, the Court in *Miles* stated that "we restore a uniform rule applicable to all actions *for the wrongful death of a seaman*, whether under DOHSA, the Jones Act, or general maritime law."  498 U.S. at 33, 111 S.Ct. at 326 (emphasis added).  Moreover, while federal appellate and district court opinions are to be respected and are persuasive, we are not bound by them.  *See Chittenden v. State Farm Mut. Auto. Ins. Co.*, 00-414 (La. 5/15/01), 788 So.2d 1140.  Indeed, even the federal courts are not uniform in their interpretation of the effect of *Miles*.  Thus, we respectfully decline to follow *Bertrand*.  Instead, we hold that, as a matter of law, Mrs. Shields may pursue her loss of consortium claim against the Baker Group.

## DISPOSITION

For the foregoing reasons, we deny the Baker Group's writ application at its cost and remand the matter to the trial court for further proceedings consistent with this opinion.

**WRIT DENIED.**

BRIAN T. SHIELDS, ET UX.

VERSUS

BAKER HUGHES, INC., ET AL.

**DECUIR, J., dissenting.**

I respectfully dissent and would grant the writ.

The majority opinion fails to follow established precedent of this court, the federal district courts, and the United States Supreme Court. In so doing, the majority undermines the strong federal policy in favor of uniformity in maritime law. I do not believe that such an intrusion by this court into the general maritime law is warranted or permissible. Moreover, the majority's unwarranted intrusion is especially egregious in this case because the accident occurred on the outer continental shelf, well outside the territorial waters of Louisiana.

*Bertrand v. Air Logistics, Inc.*, 01-1655 (La.App. 3 Cir. 6/19/02), 820 So.2d 1228, is clearly on point in this case. Unable to escape this obvious point, the majority concludes that *Bertrand* was incorrectly decided. I must disagree.

The majority cites *Green v. Industrial Helicopters, Inc.*, 593 So.2d 634, 639 for the proposition that "Louisiana may afford a remedy not traditionally found in the maritime law, provided that the remedy neither conflicts with substantive maritime law nor impermissibly interferes with the requirement of uniformity." The majority argues that its opinion does not interfere with uniformity because Shields is not a seaman. This argument might be persuasive were the restrictions on the recovery of non-pecuniary damages limited to cases arising under the Jones Act, DOHSA, or other statutory maritime law. This, however, is not the case.

In *Miles v. Apex,* 498 U.S. 19, 111 S.Ct. 317 (1990), the United States Supreme Court clearly extended the limitation to general maritime law. This was to remedy the absurd anomaly that a seaman could not recover nonpecuniary damages under statutory maritime law but could recover those damages under the general maritime law. In so doing, the court declined to narrowly limit the scope of its prior decisions regarding uniformity.

Despite the Supreme Court's unwillingness to narrowly interpret itself, the majority insists on narrowly construing *Miles* to provide Shields with a loss of consortium claim. The majority is creating a new anomaly whereby under the general maritime law, as interpreted by the majority, a seaman may not recover nonpecuniary damages for injuries on the high seas but a non-seaman may. In straining to reach this result, the majority cannot escape *Bertrand*.

Instead, the majority finds that *Bertrand* is wrong and relies on the reasoning in *Warren v. Sabine Towing and Transportation Co.,* 01-573 (La.App. 3 Cir. 10/30/02), 831 So.2d 517, *writs denied,* 02-2926, 02-2927, 02-2936 (La. 2/14/03), 836 So.2d 116. In *Warren*, this court carved out a narrow exception for a seaman to recover nonpecuniary damages when suing a non-employer manufacturer. The first and fourth circuits have both rejected such an exception. *See Dixon v. Cliffs Drilling Company*, 92-2188 (La.App. 1 Cir. 11 /24 /93), 633 So.2d 277; *Trahan v. Texaco, Inc.*, 93-39 (La.App. 4 Cir. 9/30/93), 625 So.2d 295. Likewise, in declining to follow *Warren,* the United States District Court for the Eastern District of Louisiana found that *Warren* suffered from "certain inconsistencies" together with "a fundamental misapplication of *Miles.*" *Scarborough v. CLEMCO Industries,* 264 F.Supp. 337 (E.D. La. 2003).

Similar to the *Scarborough* court, I find the majority's attempts to distinguish this case from *Miles,* and the federal district courts that have followed it, unpersuasive.

2

I find that *Bertrand* correctly applied *Miles* in concluding that to allow the recovery of nonpecuniary damages by a non-seaman injured on the high seas would contradict the policy of uniformity espoused in *Miles*.

For the foregoing reasons, I respectfully dissent and would grant the writ.