McDonald, j.
 

 lain this case, plaintiffs sought recovery under general maritime law and Louisiana wrongful death and survival laws for the death and pre-death suffering of a Louisiana self-employed commercial crab fisherman, who was killed in Louisiana territorial and navigable waters when a barge being pushed by a tug boat struck his crab boat. The trial court found the defendant, who owned and operated the tug boat, 60 percent at fault and the decedent 40 percent at fault for the incident, awarded plaintiffs pecuniary and nonpecu-niary damages, and taxed costs to the defendant. The defendant appealed and the plaintiffs answered the appeal and urged the trial court erred in assigning fault to the decedent and by awarding only minimal survival damages. For the following reasons, we affirm.
 

 
 *834
 
 FACTUAL AND PROCEDURAL HISTORY
 

 The decedent, Thuan Tran, was a self-employed crab fisherman who died as a result of a maritime accident in Louisiana navigable waters. In March 2004, Thuan moved to New Iberia to work as a crab fisherman. He bought a crab boat fitted with a metal crab rack and crab traps, and Thuan and his wife, Nga Trinh, began preparing the boat and traps for commercial crabbing. Around April 24, 2004, local crab fishermen, Lac Le (Lac) and Hoc Tran (Hoc), took Thuan out in his boat from the dock at Jay’s Seafood in Louisa and showed him how to get to several crabbing locations in the bay via the Intra-coastal Waterway Canal (“Intracoastal Canal”) and the Ivanhoe Canal.
 

 In the early morning hours of April 27, 2004, Thuan and Hoc set out in Thuan’s crab boat from Jay’s Seafood to set out Thuan’s crab traps in the bay for the first time. Around 8:30 a.m., another local fisherman, Quang Nguyen (Quang), who was collecting crab traps in the bay and knew Thuan, saw Thuan’s boat as it passed, heading in an eastbound direction towards the Ivanhoe Canal. Thuan ) ncalled Quang on the CB radio and told Quang that he was headed in to get more crap traps. Quang did not see Thuan’s boat again.
 

 Around 9:00 a.m., Lac talked to Thuan by cell phone. Thuan reported that everything was going fine, he and Hoe had set out all of the crab traps, and they were returning to Jay’s Seafood to pick up more traps. During the conversation, Thuan told Lac that they were nearing a landmark in the Ivanhoe Canal where it meets the Intracoastal Canal. This was the last contact anyone had with Thuan.
 

 Thuan’s crab boat never returned to Jay’s Seafood. Later that day, local authorities and fishermen began searching the area waterways for Thuan and Hoc. The next day police found debris, including blue painted wood, and several items that Lac and Quang identified as coming from Thuan’s boat. Sadly, Thuan’s body was recovered on April 29, 2004, and Hoc’s body was found the next day. An autopsy revealed that Thuan asphyxiated due to drowning, and that he had postmortem propeller injuries to his upper and lower extremities and scalp. Days later, authorities located and recovered Thuan’s submerged boat in the Intracoastal Canal.
 

 Authorities investigated the accident. At the time Thuan was last heard from, the only other marine traffic underway in the Ivanhoe Canal area of the Intracoastal Canal was the westbound MW John 3:16 tug boat that was pushing a tow of six empty barges. Dufrene Boats, Inc. owned and operated the M/V John 3:16. Authorities located the forward starboard barge in the tow, CC-95151, and found blue and white paint scrapings on the starboard front rake of the barge. Iberia Parish Sheriffs Office crime scene investigator, Deputy Robert Green, took photos of barge CC-95151 and samples of the paint scrapings for analysis and comparison with paint samples taken from the recovered pieces of Thuan’s boat. The paint samples were identical.
 

 |4Nga Trinh, individually and on behalf of her minor children, Hao Tran and Lynn Tran, brought a wrongful death and survival action against Dufrene seeking recovery of pecuniary and nonpecuniary damages. The plaintiffs alleged that Dufrene negligently operated the MW John 3:16 causing barge CC-95151 to collide with Thuan’s boat which resulted in Thuan’s death. Conversely, Dufrene denied any liability for Thuan’s death arguing that the minimal amount of paint scrapings and the location of those scrapings on the starboard rake of CC-95151 showed that Thuan’s boat was not upright when CC-
 
 *835
 
 95151 came into contact with it. Dufrene contends that whatever caused Thuan’s boat to be in that position also caused Thuan’s death.
 

 As to the plaintiffs’ request for nonpecu-niary damages, Dufrene filed a motion for partial summary judgment seeking dismissal of those damages, contending that nonpecuniary damages are not recoverable under general maritime law for a wrongful death of a commercial fisherman. The trial court denied Dufrene’s motion for partial summary judgment, finding that general maritime law and federal substantive maritime law do not preclude recovery of nonpecuniary damages for the wrongful death of a self-employed commercial fisherman in territorial waters, and that the Louisiana wrongful death statute allows for recovery of nonpecuniary damages. Dufrene applied for supervisory writs and this court declined to exercise its supervisory jurisdiction.
 
 [1]
 

 The trial court conducted a three day bench trial in November 2007. Evidence and testimony concerning paint colors on Thuan’s boat, paint transfer from the crab boat to barge CC-95151, and the chemical analysis of the paint samples taken from the two vessels were presented. Pictures of the barge and the salvaged crab boat also were introduced into evidence. As there was no issue that at some point barge CC-95151 struck Thuan’s boat, the issue of Dufrene’s |r,potential liability for Thuan’s death came down to a determination of whether the crab boat was in an upright or inverted position when the barge struck it. Dufrene contended that if the boat was upside down at the time that CC-95151 came into contact with the boat, then some other event was responsible for Thuan’s death.
 

 As there were no eye witnesses to the event, the parties offered opposing expert opinion testimony on this issue. Plaintiffs’ expert marine surveying witness, William Kyle, opined that the crab boat was upright and stopped when it was struck by the barge. Kyle based his opinion on his inspection of the damage to the crab boat, in particular the damage to the port side of the vessel, and his analysis of the scratches on the metal crab trap, railing, and fiberglass hull, the scrapes and filing down of the hull area of the boat, and the location of the blue painted wood on the crab boat. Conversely, Dufrene’s expert, Norman Dufour, Jr., opined that the crab boat had to be upside down based on his inspection of the damage extending over a substantial portion of the port side of the crab boat and his review of the barge pictures showing a small amount of paint transfer, the height above the waterline of the paint, and the paint being found on only a limited portion of the barge. Neither Kyle nor Dufour physically examined the barge.
 

 At the close of the trial, the trial court issued its findings. Based on the evidence presented, the trial court found that Thuan’s boat was struck by Dufrene’s barge. The trial court found that it was more likely than not that the crab boat was upright when struck by the barge, that Thuan was on the boat when it was struck, and that, for reasons unknown, Thuan’s boat was stopped in the navigation portion of the Intracoastal Canal at the time it was hit.
 

 As to liability, the trial court determined that both parties shared in the responsibility for the accident. The trial court found Thuan was 40% at fault because it was more likely than not that Thuan’s boat was
 
 *836
 
 stopped in an area where it should not have been stopped and where larger vessels had the right-of-way. [ f;The trial court found that the M/V John 3:16 had a duty to maintain a proper lookout and to notice and avoid the stopped crab boat, and that the captain and crew should have seen the upright and stopped crab boat and avoided it. The trial court determined Dufrene was 60 percent at fault for the accident. The trial court determined the total nonpe-cuniary damages to be $1,000,000 and the total pecuniary to be $519,499, which included $15,000 for Thuan’s survival damages. After reducing those amounts by the 40 percent fault allocated to the decedent, the trial court entered a judgment in favor of Nga Trinh for $545,399.40 in pecuniary and nonpecuniary damages and $183,150 in nonpecuniary damages for each of Thuan’s two children. The trial court assessed costs to Dufrene. Dufrene appealed asserting five assignments of error. The plaintiffs answered the appeal, urging that the trial court erred in finding Thuan 40 percent at fault for the accident, and in setting the survival damages at an unreasonably low $15,000.
 

 STANDARD OF REVIEW
 

 State courts sitting in maritime cases apply state standards of review.
 
 Winkler v. Coastal Towing, L.L.C.,
 
 2001-0399 (La.App. 1 Cir. 4/11/02), 823 So.2d 351, 356. The question of the applicability of state law raises a legal question, thus an appellate court need not give special weight to the findings of the trial court.
 
 Id.
 
 Louisiana appellate courts apply the manifest error-clearly wrong standard of review of facts in general maritime cases.
 
 Terrebonne v. B & J Martin, Inc.,
 
 2003-2658 (La.App. 1 Cir. 10/29/04), 906 So.2d 431, 435. An appellate court cannot reverse factual findings unless it finds that no reasonable factual basis exists for the finding and that it is manifestly erroneous or clearly wrong.
 
 Stobart v. State through Department of Transportation and Development,
 
 617 So.2d 880, 882 (La.1993). If the trial court’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse. Consequently, where there are two permissible views of the evidence, |7the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong.
 
 Marie v. John Deere Insurance Company,
 
 96-1288 (La.App. 1 Cir. 3/27/97), 691 So.2d 1327, 1330.
 

 ASSIGNMENTS OF ERROR
 

 Three of Dufrene’s assignments of error concern the trial court’s factual finding that Thuan’s boat was upright at the moment of impact with barge CC-95151. Dufrene argues that the trial court’s finding is inconsistent with the physical evidence, which showed that the crab boat could not have been in an upright position when it came into contact with the barge. Dufrene contends that the opinion of plaintiffs’ expert, Kyle, was fatally flawed, because Kyle did not consider Deputy Green’s photographs of the physical evidence on barge CC-95151 when he rendered his initial opinion that the boat was upright.
 

 Based on our thorough examination of the record, we find that there is a reasonable factual basis in the record for the trial court’s finding that Thuan’s boat was upright at the time it impacted with barge CC-95151 and the collision resulted in Thuan’s death. The evidence of paint transfer from the crab boat to barge CC-95151 established that at some point in time the two vessels came into contact with each other. The testimony of Captain Boudreaux, Lac and Quang, along with the April 27, 2004, captain’s daily log sheet for the M/V John:3:16, placed the crab boat and CC-95151 in the same area
 
 *837
 
 of the Intracoastal Canal at the time that witnesses last saw or spoke to Thuan. The April 27, 2004, Louisa bridge tender’s report and Captain Boudreaux’s testimony-established that the M/V John 3:16 was the only vessel underway in the Intracoastal Canal in the Ivanhoe Canal area at the time the crab boat was in that area.
 

 As to the trial court’s finding that Thuan’s crab boat was in an upright position at the time of impact with barge CC-95151, the record shows that no one witnessed the impact between the crab boat and barge, and the parties presented | ^conflicting expert opinion testimony to establish the position of the crab boat at the time of impact. In applying the manifest error standard, a trial court’s credibility determinations are entitled to great deference.
 
 See State ex rel. Thibodeaux v. State,
 
 2001-2510 (La.3/8/02), 811 So.2d 875 (per curiam). The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. A fact finder may accept or reject the opinion expressed by an expert witness, in whole or in part.
 
 Ryan v. Zurich American Insurance Company,
 
 2007-2312 (La.7/1/08), 988 So.2d 214, 222.
 

 We find the testimony of the plaintiffs’ expert, Kyle, did not contradict the objective evidence in the record and his opinion was plausible on its face.
 
 See Ryan,
 
 988 So.2d at 222. We also find no merit to Dufrene’s contention that Kyle’s opinion was fatally flawed because he failed to take into consideration the paint scrapings on the barge, as Kyle’s opinion did not change after he reviewed the photographs of the paint scrapings on barge CC-95151. At trial, Kyle explained that the crab boat’s fiberglass hull was painted white above the waterline and green below the waterline, and the only blue paint he observed was on wood located in the helm area of the boat. The photographs of the paint scrapings on the barge showed white paint scrapings located under blue paint scrapings. Kyle testified the paint pattern on the barge was consistent with the paint pattern on the crab boat being in an upright position at the time of impact. Kyle also testified that there was no evidence of green paint scrapings on the barge, and he would have expected to see green paint scrapings from the boat’s fiberglass hull on the barge if the boat had been in an inverted position. If the boat were upside down, Kyle explained, there should not have been any blue paint scrapings on the barge, as the areas painted blue would have been under the waterline at the time of impact. Kyle’s explanation is consistent with the laboratory report on the paint samples |fltaken from barge CC-95151, as there were no samples of green paint scrapings from the barge submitted for analysis. Accordingly, we find a reasonable factual basis exists for the trial court’s findings of fact and these assignments of error are without merit.
 

 In conjunction with the above assignments of error, Dufrene asserts the trial court erred in taxing costs to a non-liable defendant. Louisiana Code of Civil Procedure art.1920 governs the taxing of court costs. It reads:
 

 Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
 

 While the assessment of costs may be made to reflect the percentage of negligence attributable to each party, the trial court may assess costs in any equitable manner pursuant to La.Code. Civ. P. art 1920.
 
 Gauthier v. Wilson,
 
 2004-2527
 
 *838
 
 (La.App. 1 Cir. 11/4/05), 927 So.2d 383, 390,
 
 writ denied,
 
 2005-2402 (La.3/31/06), 925 So.2d 1258.
 
 [2]
 
 This article has been liberally interpreted as granting broad discretion to the trial court. Upon review, an appellate court will not disturb the trial court’s fixing of costs absent an abuse of the sound discretion afforded the trial court.
 
 Id.
 
 In light of our ruling on the above assignments of errors, the premise for Dufrene’s argument fails. Moreover, we find the trial court did not abuse its ' discretion in taxing Dufrene with all of the costs. The plaintiffs’ claims in the underlying action resulted in a judgment rendered in a bench trial in favor of the plaintiffs based on a substantial assessment of fault against Dufrene.
 
 See Gau-thier,
 
 927 So.2d at 390(fmding the trial court did not abuse its discretion in casting all cost to a defendant found 60 percent at fault).
 

 hnRECOVERY OF NONPECUNIARY DAMAGES
 

 The trial court found the plaintiffs were entitled to pursue nonpecuniary damages under the Louisiana wrongful death law pursuant to
 
 Yamaha Motor Corporation, U.S.A. v. Calhoun,
 
 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996), because Thuan was not a Jones Act seaman or a longshoreman covered by the Longshore and Harbor Workers’ Compensation Act (LHWCA).
 

 In its last assignment of error, Dufrene contends the trial court committed legal error, urging
 
 Yamaha
 
 restricts recovei-y of nonpecuniary damages in a general maritime wrongful death action to nonseafarers killed in state navigable waters and precludes such recovery when the decedent is a seafarer. Dufrene further contends that
 
 Yamaha
 
 identifies seafarers as, “a seaman, longshore worker, or person otherwise engaged in a maritime trade”. Dufrene draws this conclusion from the second paragraph in the opinion that reads:
 

 Traditionally, state remedies have been applied in accident cases of this order'— maritime wrongful-death eases in which no federal statute specifies the appropriate relief and the decedent was not a seaman, longshore worker, or person otherwise engaged in a maritime trade. We hold, in accord with the United States Court of Appeals for the Third Circuit, that state remedies remain applicable in such cases and have not been displaced by the federal maritime wrongful-death action recognized in
 
 Moragne v. States Marine Lines, Inc.,
 
 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970).
 

 Yamaha,
 
 516 U.S. at 202, 116 S.Ct. at 621-22. (Emphasis added.)
 

 Because Thuan’s death occurred on Louisiana navigable waters and has a maritime nexus, this matter clearly falls within maritime jurisdiction.
 
 See Giorgio v. Alliance Operating Corp.,
 
 2005-0002 (La.1/19/06), 921 So.2d 58, 66 (providing the test for admiralty tort jurisdiction). The United States Constitution grants to federal district courts jurisdiction in all “cases of admiralty and maritime jurisdiction.” U.S. Const, art. Ill, section 2;
 
 Green v. Industrial Helicopters, Inc.,
 
 593 So.2d 634, 637 (La.1992),
 
 cert. denied,
 
 506 U.S. 819, 113 S.Ct. 65, 121 L.Ed.2d 32 (1992). State courts have concurrent jurisdiction by virtue of the |u“savings to suitors” clause of the Judiciary Act of 1789.
 
 Green,
 
 593 So.2d at 637; 28 U.S.C.A. § 1333 (1948). As a general
 
 *839
 
 proposition, a maritime claim brought in a state court is governed by the same principles as govern actions brought in admiralty, by federal maritime law.
 
 See Giorgio,
 
 921 So.2d at 67. Generally, state courts exercising concurrent maritime jurisdiction are bound to apply substantive federal maritime statutory law and to follow United States Supreme Court maritime jurisprudence.
 
 See Green,
 
 593 So.2d at 637-38;
 
 see also Milstead v. Diamond M Offshore, Inc.,
 
 95-2446 (La.7/2/96), 676 So.2d 89, 94.
 

 However, general maritime law is not a complete or all-inclusive system.
 
 Giorgio,
 
 921 So.2d at 67. When new situations arise that are not directly governed by federal legislation or admiralty precedent, federal courts may fashion a rule for decision by a variety of methods. For example, federal courts may apply state law to supplement the general maritime law when there is no conflict between the two systems of law, and the need for uniformity of decision does not bar state action.
 
 Giorgio,
 
 921 So.2d at 67. The United States Supreme Court has made clear that the uniformity principle does not preclude the application of state law in admiralty; rather, the decision whether to apply state law in cases within admiralty jurisdiction must be based upon balancing state and federal interests.
 
 Giorgio,
 
 921 So.2d at 68. Louisiana state courts should respect Louisiana laws unless there is some federal impediment to the application of that law contained in federal legislation or a clearly applicable rule in the general maritime law.
 
 Green,
 
 593 So.2d at 638.
 

 We find that Louisiana has a strong interest in applying its own law in this case. The decedent and his family were Louisiana residents at the time of Thuan’s death; the defendant, Dufrene, is a Louisiana corporation doing business in St. Mary Parish; the incident occurred on Louisiana navigable waters; and the maritime activities of Thuan’s boat and the M/V John 3:16, on the day of the |i2incident, started and were to end in Louisiana. Also, the Louisiana wrongful death statute, La. Civ. C. art. 2315.2, provides plaintiffs in the position of the instant plaintiffs with a remedy for recovering nonpecuniary damages in a wrongful death action.
 

 Having determined that Louisiana has an interest in this matter, we must determine whether La. Civ. C. art. 2315.2 may supplement general maritime wrongful death law. In
 
 Green,
 
 the Louisiana Supreme Court provided a three-step process that state courts must use to analyze the balance of state and federal interest in an admiralty jurisdiction case.
 
 See Green,
 
 592 So.2d at 639;
 
 Giorgio,
 
 921 So.2d at 72. This three-step analysis entails determining whether there is applicable federal legislation, identifying the characteristic features of maritime law, and examining the scope of the uniformity requirement.
 
 Id.
 

 Green Analysis—First Step
 

 The parties do not contend that Thuan’s death falls within the scope of the Jones Act or other federal maritime wrongful death statutes. Accordingly, we proceed to the second step to identify the characteristic features of maritime law and determine whether there is a clearly applicable general maritime rule that precludes applying the Louisiana wrongful death statute under the facts of this case.
 

 Green Analysis—Second Step
 

 Dufrene contends
 
 Yamaha
 
 creates a clearly applicable rule that precludes recovery of nonpecuniary damages under the facts of this case. Dufrene characterizes
 
 Yamaha
 
 as creating “an exception that allows non-pecuniary damages for ‘nonseafarers’ under general maritime law”, thus precluding recovery of nonpecu-niary damages for seafarers. Dufrene ar
 
 *840
 
 gues that Justice Ginsberg’s inclusion of “person otherwise engaged in a maritime trade”, in Yamaha’s second paragraph, along with “seaman” and “longshore worker” evidences the Supreme | ^Court's intent to categorize decedents, such as Thuan, as a “seafarer”. In support of this position, Dufrene cites three federal district courts cases, two from the federal district court for the Eastern District of Louisiana and one from the federal district court for the Eastern District of North Carolina, interpreting
 
 Yamaha
 
 as precluding recovery of nonpecuniary damages, under general maritime law, in actions involving the injury or death of a self-employed commercial fisherman.
 
 See Savoie v. Chevron Texaco,
 
 2004-1302, 2005 WL 2036740 (E.D.La.2005);
 
 In re Complaint of Stone Energy Corp.,
 
 2002-2969, 2002-3189, 2003 WL 21730621 (E.D.La.2003) (unpublished);
 
 Matter of Complaint of Goose Creek Trawlers, Inc.,
 
 972 F.Supp. 946 (E.D.N.C.1997).
 

 We begin our analysis by examining
 
 Yamaha
 
 to determine if it governs this matter. In
 
 Yamaha,
 
 a 12 year-old Pennsylvania girl on vacation with her parents in Puerto Rico, was killed while operating a recreational jet ski in Puerto Rican territorial waters. The parents of the girl filed an admiralty action in a Pennsylvania federal district court seeking recovery from the jet ski manufacturer, Yamaha, under Pennsylvania’s survival and wrongful death statutes, including recovery of loss of the child’s future earnings, loss of society, loss of support and services, funeral damages, and punitive damages. Yamaha filed a motion for partial summary judgment asserting that the federal maritime wrongful death action recognized in
 
 Moragne v. States Marine Lines, Inc.,
 
 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 329 (1970), displaced all remedies afforded by state law, and that the plaintiffs could only recover the child’s funeral expenses. The district court found the
 
 Moragne
 
 maritime death action displaced state remedies, but that loss of society and loss of support and services were compensable under
 
 Moragne. Yamaha,
 
 516 U.S. at 203, 116 S.Ct. at 622.
 

 The United States Third Circuit granted certiorari on the issue of whether federal maritime law displaced state wrongful death and survival statutes and held [ 14that federal admiralty law, as articulated both by statute and by the federal common law, does not preempt the application of state law wrongful death and survival acts in actions based on the death of recreational boaters (nonseamen) in territorial waters.
 
 Calhoun v. Yamaha Motor Corporation, U.S.A.,
 
 40 F.3d 622, 626, 637, 639, 644 (1994);
 
 cert. granted in part,
 
 514 U.S. 1126, 115 S.Ct. 1998, 131 L.Ed.2d 999,
 
 affirmed,
 
 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996).
 

 Following that ruling, the Supreme Court granted certiorari on the following issue. “Does the federal maritime claim for wrongful death recognized in
 
 Moragne
 
 supply the exclusive remedy in cases involving the deaths of nonseafarers in territorial waters?”
 
 Yamaha,
 
 516 U.S. at 205, 116 S.Ct. at 623. The Supreme Court explained in a footnote that by “nonseafar-ers” it meant “persons who are neither seamen covered by the Jones Act, 46 U.S.C.App. § 688 (1988 ed.), nor longshore workers covered by the Longshore and Harbor Workers’ Compensation Act, 33 U.S.C. § 901
 
 etseq.” Yamaha,
 
 516 U.S. at 205 n. 2, 116 S.Ct. at 623 n. 2. The Supreme Court provided a lengthy analysis of federal maritime statutes, traditional maritime common law policies and concepts, and its rulings in prior admiralty cases involving the availability of state law remedies in cases where federal maritime statutes provide rules that govern certain aspects of the liability in those cases. The
 
 *841
 
 decedents in the wrongful death cases analyzed in
 
 Yamaha
 
 were Jones Act seamen, workers covered under LHWCA, or decedents killed on the high seas that fell within the scope of the Death on the High Seas Act, 46 U.S.C.App. § 761 et seq. (DOHSA).
 

 From its analysis, the Supreme Court determined, “Congress has not prescribed remedies for the wrongful deaths of non-seafarers in territorial waters.”
 
 Yamaha,
 
 516 U.S. at 215, 116 S.Ct. at 628. Taking into account what Congress sought to achieve, the Supreme Court preserved “the application of state statutes to deaths within territorial waters.”
 
 Yamaha,
 
 516 U.S. at 216, 116 S.Ct. at 628. | ^Ultimately, the Supreme Court answered the question it fashioned, holding “damages available for the jet ski death of Natalie Calhoun are properly governed by state law.”
 
 Yamaha,
 
 516 U.S. at 216, 116 S.Ct. at 629.
 

 We find particularly important that in framing the question presented in
 
 Yamaha,
 
 the Supreme Court introduced the term “nonseafarer”, defining a “nonseafarer” as “persons who are neither seamen covered by the Jones Act ... nor long-shore workers covered by the Longshore and Harbor Workers’ Compensation Act.” By defining “nonseafarer” in this manner, it is clear that a Jones Act seaman and a longshore worker under the LHWCA are seafarers. The LHWCA covers a range of nonseaman, longshore employees. Section 902 of the LHWCA defines “employee” as “any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker”. 83 U.S.C.A. § 902. The reference to “longshore worker, or person otherwise engaged in a maritime trade”, in the second paragraph of
 
 Yamaha,
 
 closely parallels the language in Section 902 and supports a conclusion that the Supreme Court did not intend the holdings in
 
 Yamaha’s
 
 opinion to extend to general maritime wrongful death actions of decedents such as Thuan.
 

 In further examining the intended scope of
 
 Yamaha,
 
 we find that “seafarer” appears just twice in the opinion. It first appears during the discussion of the maritime doctrine of unseaworthiness and how its development into a strict-liability rule played a role in the recognition of a wrongful death action in general maritime law. The Supreme Court stated, “[t]he unseaworthiness doctrine thus became a ‘species of liability without fault,’ and soon eclipsed ordinary negligence as the primary basis of recovery when a seafarer was injured or killed.” (citation omitted).
 
 Yamaha,
 
 516 U.S. at 208, 116 S.Ct. at 625 (citing
 
 Miles v. Apex Marine Corp.,
 
 498 U.S. 19 at 25-26, 111 S.Ct. 317 at 321-22, 112 L.Ed.2d 275). “Seafarer” appears |1f;again in a footnote explaining how the
 
 Moragne
 
 wrongful death action provided longshore workers access to the doctrine of unseaworthiness that was available to true seamen covered under the Jones Act. The Supreme Court stated, “[t]hus, nothing short of a federal maritime right of action for wrongful death could have achieved uniform access by seafarers to the unseaworthiness doctrine, the Court’s driving concern in
 
 Moragne.” Yamaha,
 
 516 U.S. at 213 n. 10, 116 S.Ct. at 627 n. 10 (citing
 
 Moragne,
 
 398 U.S. at 396 n. 12, 90 S.Ct at 1785 n. 12). In tracing the term “seafarer” to
 
 Miles
 
 and
 
 Moragne,
 
 we find the Supreme Court uses the term “seamen” rather than “seafarer” in those opinions, and additionally, those cases involve the deaths of a Jones Act seaman and a LHWCA harbor worker. Thus, we find that the
 
 Yamaha
 
 opinion used the term “seafarer” in the context of providing uniform access to the unique maritime doc
 
 *842
 
 trine of unseaworthiness among the classes of maritime employees covered under the Jones Act and LHWCA.
 

 Finally, we note that the second paragraph in
 
 Yamaha
 
 specifically references, with approval, the
 
 Yamaha
 
 appellate opinion. The Supreme Court stated, “[w]e hold in accord with the United States Court of Appeals for the Third Circuit, that state remedies remain applicable in such cases and have not been displaced by the federal maritime wrongful-death action recognized in
 
 Moragne.” Yamaha,
 
 516 U.S. at 202, 116 S.Ct. at 621-22. The Third Circuit did pot use the term “seafarer” in its appellate opinion. Also, the appellate opinion did not discuss displacement of state law remedies in general maritime wrongful death actions of decedents whose deaths did not fall within the scope of the Jones Act, the LHWCA, or other federal maritime tort recovery scheme.
 
 See Calhoun,
 
 40 F.3d 622.
 

 We can find nothing in
 
 Yamaha,
 
 or the cases cited therein, to suggest the Supreme Court intended the .language in the second paragraph of the opinion to extend the holdings or dicta in
 
 Yamaha
 
 to decedents not covered by a federal |17maritime wrongful death tort recovery scheme. Accordingly, we find
 
 Yamaha
 
 does not create a general maritime rule clearly applicable to the instant matter.
 

 As to the lower federal cases relied upon by Dufrene, the Louisiana Supreme Court has held that in matters involving federal law, state courts are bound only by decisions of the United States Supreme Court. Federal appellate court decisions are persuasive only.
 
 Shell Oil Company v. Secretary, Revenue and Taxation,
 
 96-0929 (La.11/25/96), 683 So.2d 1204, 1210 n. 11. While not bound by the decisions in these lower federal court cases, we look to them to see if they provide any guidance in the instant matter.
 

 We find the three federal district court cases cited by Dufrene are unpersuasive in resolving the issues presented in this appeal. These federal court cases found self-employed commercial fishermen, who were injured or killed in state waters, were “seafarers” under
 
 Yamaha
 
 because they were “[persons] otherwise engaged in a maritime trade”. These cases give no importance to Yamaha’s specific definition for “nonseafarer,” because the definition is found in a footnote and not in the body of the opinion. Considering that Yamaha’s maritime policy and case analysis focused on circumstances where liability in a maritime wrongful death action could also evoke liability under the Jones Act, LHWCA, or DOHSA, we find these lower federal court cases fail to properly consider the language in
 
 Yamaha’s
 
 second paragraph in the context of the opinion as a whole. Also, we find these cases do not clearly identify any admiralty policy, principle, or rule that would be served by precluding application of state law under the facts of this case. Accordingly, we find no clearly applicable general maritime rule that precludes applying the Louisiana wrongful death statute in this matter.
 

 Gr-een Analysis
 
 — Third
 
 Step
 

 The last step of the
 
 Green
 
 analysis requires analyzing the scope of the uniformity requirement. Generally, when Congress has prescribed a | ] ¡¡comprehensive tort recovery regime to be uniformly applied, there is no cause for enlargement of damages statutorily provided.
 
 Yamaha,
 
 516 U.S. at 215, 116 S.Ct. at 628 (citing
 
 Miles,
 
 498 U.S. at 30-36, 111 S.Ct. at 324-28). In
 
 Miles,
 
 the Supreme Court articulated a damages uniformity principle that precluded recovery of nonpe-cuniary damages in general maritime wrongful death actions of Jones Act seamen.
 
 Miles,
 
 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275.
 

 
 *843
 
 In
 
 Rebardi v. Crewboats, Inc.,
 
 2004-0641 (La.App. 1 Cir. 2/11/05), 906 So.2d 455, 458-460, this court cited, with approval, the United States First Circuit’s analysis of
 
 Miles
 
 in
 
 CEH, Inc. v. F/V Seafarer,
 
 70 F.3d 694, 700-702 (1 Cir.1995), in determining whether
 
 Miles
 
 precluded recovery of punitive damages in an admiralty case. The
 
 CEH
 
 court reviewed the approach used in
 
 Guevara v. Maritime Overseas Corp.,
 
 59 F.3d 1496, 1506 (5 Cir.1995) (en banc) to determine whether the
 
 Miles
 
 damages uniformity principle governed the facts of an admiralty case. The
 
 Guevara
 
 court first determined whether the factual setting of the case was covered by a statute like the Jones Act or DOHSA.
 
 Rebardi,
 
 906 So.2d at 459 (citations omitted). Then, upon finding a statutory/general maritime law overlap, the court invoked the
 
 Miles
 
 damages uniformity principle and excluded punitive damages.
 
 Id. Guevara
 
 illustrates that
 
 Miles
 
 may be applicable in those areas of maritime law where, at the very least, there is an overlap between statutory and decisional law.
 
 Id.
 

 The
 
 CEH
 
 court concluded that the uniformity concern expressed in
 
 Miles
 
 was not with respect to an award of nonpecuni-ary damages in maritime cases in general, but with inconsistency with Congressional pronouncement.
 
 See Rebardi,
 
 906 So.2d at 460 (citations omitted). The
 
 CEH
 
 court concluded
 
 Miles
 
 does not mandate a uniform result for every maritime action and was hesitant to ascribe to the Supreme Court a holding that goes well beyond any issue discussed there.
 
 Id.
 
 In the absence of any relevant legislation, the
 
 CEH
 
 court concluded that the | ^uniformity principle enunciated in
 
 Miles
 
 was inapplicable.
 
 Id.
 
 Applying those articulated principles to the .facts presented in
 
 Rebardi,
 
 this court found the case was neither a Jones Act nor a DOHSA case and, in the absence of any relevant legislation, held that the uniformity principle enunciated in
 
 Miles
 
 was inapplicable.
 
 Rebardi,
 
 906 So.2d at 461.
 

 We find that the approach we used in
 
 Rebardi
 
 applies to our analysis of the
 
 Miles
 
 damages uniformity principle in this case. As previously noted, there is no dispute that facts surrounding Thuan’s death and the plaintiffs’ wrongful death action under general maritime law do not overlap with the tort recovery regimes provided by the Jones Act, the LHWCA or the DOHSA. Accordingly, we find no Congressional remedial scheme prohibits the award of nonpecuniary damages in a general maritime wrongful death action of a local self-employed fisherman killed in Louisiana waters. We recognize that there may be some circumstances, such as in a wrongful death action of a Jones Act seaman against a non-employer, third-party defendant, that are not directly covered by the Jones Act or DOHSA but are so highly analogous factually to a Jones Act wrongful death action that the
 
 Miles
 
 damages uniformity principle may preclude application of state law remedies.
 
 See Scarborough v. Clemco Industries,
 
 391 F.3d 660, 668 (5 Cir.2004);
 
 cert. denied,
 
 544 U.S. 999, 125 S.Ct. 1932, 161 L.Ed.2d 772 (2005). However, we find that the circumstances of this case are not highly analogous factually to a wrongful death action created under any federal maritime statutory scheme.
 

 Until such time as Congress or the United States Supreme Court sees fit to address this situation, we see no reason to find the
 
 Miles
 
 damages uniformity principle precludes a Louisiana state court from supplementing general maritime law with Louisiana law that allows for the recovery of nonpecuniary damages in a wrongful death action of a decedent such as Thuan.
 
 See Rebardi,
 
 906 So.2d at 20461. Accordingly, we find that the
 
 Miles
 
 damages
 
 *844
 
 uniformity principie is not applicable in this matter.
 

 In sum, we find Louisiana has a substantial interest in applying its laws in a case involving the death of a Louisiana crab fisherman in Louisiana navigable waters. The defendant is a Louisiana corporation, the facts occurred solely in Louisiana, and Louisiana is where the plaintiffs resided at the time of the death and when suit was initiated. Applying Louisiana wrongful death law in this matter will not conflict with specific federal maritime law or with the characteristic features of maritime law, nor would the application of Louisiana wrongful death law interfere with federal uniformity requirements, as the liability resulting from Thuan’s death does not fall within any Congressionally created mai'i-time statutory regime limiting the type of damages that are recoverable. Accordingly, we affirm the trial court judgment awarding nonpecuniary damages in favor of the plaintiffs and against Dufrene.
 

 PLAINTIFFS’ ANSWER ON APPEAL
 

 In answering Dufrene’s appeal, plaintiffs assert that the trial court erred in finding Thuan 40 percent at fault for the incident, urging the record does not support this finding and that Dufrene did not allege Thuan’s fault as an affirmative defense in its answer.
 

 The determination and allocation of comparative fault are factual inquires that will not be disturbed absent manifest error or unless the court was clearly wrong.
 
 Dupree v. City of New Orleans,
 
 99-3651 (La.8/31/00), 765 So.2d 1002, 1015. The trier of fact is owed great deference in its allocation of fault. Even if the reviewing court would have decided the case differently had it been the original trier of fact, the trial court’s judgment should be affirmed unless manifestly erroneous or clearly wrong.
 
 Id.
 
 To the extent that a party defendant seeks to have the benefits of comparative fault of another as an affirmative defense, it bears the )21 burden of proof by a preponderance of the evidence that the other party’s fault was a cause-in-fact of the damage being complained about.
 
 Dupree,
 
 765 So.2d at 1015 n. 13.
 

 Contrary to plaintiffs’ assertion, the record reveals Dufrene did assert the decedent’s fault as an affirmative defense in its answer. In answering, Dufrene alleged “[a]s a separate and complete defense ... that the death of the decedent was not the result of any negligence on behalf of Du-frene ... but was caused or contributed to by the fault and negligence of the decedent.” We also find the trial court was not manifestly erroneous or clearly wrong in finding Thuan 40 percent at fault in this matter. The facts introduced at trial establish that Thuan’s crab boat was within the navigable channel of the Intracoastal Canal when it was struck by the barge, and expert testimony establishes that Thuan’s boat was more likely than not in an upright position and stopped at the time of the incident.
 

 Plaintiffs also contend that the $15,000 they received for Thuan’s survival action is too low, as it is inconsistent with a finding that Thuan was comparatively at fault in this matter and request this court to increase the award to $100,000. A court may award damages for the pain and suffering of the decedent where there is the smallest evidence of pain on the part of the victim, by his actions or otherwise.
 
 Magee v. Pittman,
 
 98-1164 (La.App. 1 Cir. 5/12/00), 761 So.2d 731, 750,
 
 writ denied,
 
 2000-1694 (La.9/22/00), 768 So.2d 31. However, like other general damage awards, the amount awarded is subject to the vast discretion of the jury.
 
 Id.
 

 As to the evidence of Thuan’s pre-death damages, the evidence in the record sup
 
 *845
 
 ports the trial court’s finding that Thuan was alive when he entered the water, as the post-mortem examination listed Thuan’s cause of death as asphyxiation by drowning. The post-mortem examination also provides that the amputation of Thuan’s arm and lower leg and the lacerations to his head and torso occurred after ⅛⅛ death. The trial court also found that the lacerations to his head and torso occurred post-mortem. There is no evidence establishing how long Thuan was in the water before he perished. However, that the trial court found that the impact of Thuan’s modest crab boat with a barge being pushed, along with five other barges, by a tugboat caused Thuan to enter the water. Considering the sizes of the vessels involved, the finding that Thuan’s boat was stopped at the time of impact, and the lack of evidence showing that Thuan remained conscious after the impact, we find that it was not manifestly erroneous for the trial court to award $15,000 to the plaintiffs for Thuan’s survival damages.
 

 CONCLUSION
 

 For the reasons stated above, we affirm the judgment of the trial court. All costs of this appeal are assessed to appellant, Dufrene Boats, Inc.
 

 [1]
 

 . By majority vote, this court declined to exercise its supervisory jurisdiction over the interlocutory judgment in Docket No. 2007 CW 0827. Judge Parro dissented and stated that he would grant the writ.
 

 [2]
 

 . Nos. 2004-2527, 2004-2528, 2004-2529, 2004-2530, 2004-2531, 2004-2532, 2004-2533, 2004-2514